THOMAS GREENWOOD *et al.*

*v.*

CHARLES GREENWOOD *et al.*

*Opinion filed February 17, 1899.*

1. WILLS—*if possible, a will should be so construed as to give effect to all its parts.* A will should, if possible, be so construed as to give effect to all its parts, and not so as to render some of its provisions invalid or ineffectual.

2. SAME—*repugnancy cannot be based upon void clause.* A clause in a will cannot be rejected as repugnant to a former clause if the construction which must be placed upon the former clause to sustain the claim of repugnancy renders it void.

3. SAME—*in construing will court may consider the alienage of donees.* In order to understand the testator's circumstances, the court, in construing a clause of a will disposing of the residue of the testa-

tor's estate to the children of his deceased brother, may receive evidence as to the character of the testator's property, that the children of the deceased brother were non-resident aliens, and that the testator knew that fact.

4. SAME—*it is presumed that testator knew the law and intended to dispose of all his property.* It will be presumed that the testator knew the law of the State disqualifying non-resident aliens from taking real estate, and that he did not intend to die intestate as to a part of the property.

5. SAME—*purpose of act disqualifying aliens as devisees.* The purpose of the act disqualifying aliens as devisees was not to inhibit them from becoming beneficiaries under wills, but merely from acquiring or holding title to land in Illinois.

6. EQUITABLE CONVERSION—*term "equitable conversion" defined.* An equitable conversion is a change of real property into personal, or *vice versa,* presumed to exist only by intendment of equity.

7. SAME—*equity regards that as done which ought to be done.* Where the provisions of the will make it the duty of the executrix to sell land and pay over the proceeds to legatees, equity will regard the conversion as having taken place at the testator's death, the status of the beneficiaries in such case being legatees of personal property and not devisees of real estate.

8. SAME—*duty of executrix to convert land into money may be implied.* Where the power granted to an executrix to convert land into money is full and complete and not referred to her discretion, the absence of an express command or direction will not render the exercise of such power discretionary, when to so hold would defeat the testator's intention as manifested from the whole will.

9. SAME—*when aliens take as legatees under equitable conversion.* Non-resident aliens who would be incompetent to take real estate will take as legatees, under the principle of equitable conversion, where, upon a fair construction of the will, it is the duty of the executrix to sell the land and distribute the proceeds among them in order to carry out the testator's intention.

APPEAL from the Circuit Court of Cook county; the Hon. EDWARD F. DUNNE, Judge, presiding.

FRANK B. PEASE, and WILLARD M. MCEWEN, for appellants:

A non-resident alien at the date of taking effect of a will cannot take thereunder or inherit real estate. *Ryan* v. *Egan,* 156 Ill. 224; *Beavan* v. *Went,* 155 id. 592; *Schaefer* v.

*Wunderle*, 154 id. 577; *Wunderle* v. *Wunderle*, 144 id. 40; *Jele* v. *Lemberger*, 163 id. 344; *Schultze* v. *Schultze*, 144 id. 290.

Where the language used has a plain and well understood meaning there is no room for construction. *Bates* v. *Gilbert*, 132 Ill. 298; *Howe* v. *Hodge*, 152 id. 266.

The third clause of the will is plain, and attempts to devise to non-resident aliens real estate as such, and by using the language "give and devise," and "to have and to hold to them and their heirs forever," under the absolutely settled law of the rule in *Shelley's case*, the meaning is made so plain that no construction is permissible and the property must be treated as real estate. 2 Washburn on Real Prop. (4th ed.) 490; *Baker* v. *Scott*, 62 Ill. 86; *Ewing* v. *Barnes*, 156 id. 67; *Brislain* v. *Wilson*, 63 id. 173; *Beacroft* v. *Strawn*, 67 id. 28; *Butler* v. *Huestis*, 68 id. 594; *Wicker* v. *Ray*, 118 id. 472; *Ryan* v. *Allen*, 120 id. 648; *Fowler* v. *Black*, 136 id. 363; *Carpenter* v. *Van Olinder*, 127 id. 42; *Hageman* v. *Hageman*, 129 id. 164; *Griswold* v. *Hicks*, 132 id. 494; *Wolfer* v. *Hemmer*, 144 id. 554; *Vangieson* v. *Henderson*, 150 id. 119.

The terms of the last clause giving power of sale are discretionary, and by no construction can be considered mandatory in the light of the third clause, and so there can be no equitable conversion so that the non-resident aliens could take the estate as personalty. *King* v. *King*, 13 R. I. 501; *Wurtz* v. *Page*, 19 N. J. Eq. 365; 6 Am. & Eng. Ency. of Law, 666; *Hunt's Appeal*, 105 Pa. St. 128; *Dodge* v. *Williams*, 46 Wis. 70; *Starkweather* v. *Bible Society*, 72 Ill. 59; *Dodge* v. *Pond*, 23 N.Y. 69; *Chamberlain* v. *Taylor*, 105 id. 185; *Hobson* v. *Hale*, 95 id. 589; *Ducker* v. *Brown*, 146 Ill. 17; *Haward* v. *Peavey*, 128 id. 430; *Hale* v. *Hale*, 125 id. 399.

The intention of the testator must be ascertained from the language employed, and not from extraneous conditions, and therefore the language of the will means the same whether the "children of Jacob Greenwood" are non-resident aliens or not. Language cannot be violated to give where the will itself does not give. *Updike* v. *Tompkins*, 100 Ill. 410; *Davenport* v. *Kirkland*, 156 id. 169; *Bingel*

v. *Volz,* 142 id. 214; *Dickenson* v. *Dickenson,* 36 Ill. App. 503; *Taubenhan* v. *Dunz,* 125 Ill. 524; *Blanchard* v. *Maynard,* 103 id. 65.

E. A. SHERBURNE, also for appellants:

Appellees, on the face of their own pleading, have no rights in this property, nor any standing to insist that the executrix is under any obligation or mandate to sell it, or any part thereof.

The original answer, until otherwise ordered, always remains a part of the record, and while it so remains the defendant is bound by its admissions, and a retraction of them in a supplemental answer is of no more use than so much waste paper. *Maher* v. *Bull,* 39 Ill. 531.

If a testator, after devising the fee of lands, proceeds to qualify the devise by a proviso or condition incompatible with the absolute dominion or ownership, the condition is nugatory and the estate absolute. *Wilson* v. *Turner,* 164 Ill. 398.

If there is in a will an expression, in some form, of an absolute intention that land shall be sold and turned into money, or in other words it is absolutely directed that the conversion be made, the moment the instrument takes effect, if the direction is valid, the conversion is made, and without such an expression or direction there is no conversion, equitable or otherwise. *Haward* v. *Peavey,* 128 Ill. 430.

WILLIAM A. CONOVER, also for appellants:

In construing wills effect should be given to every clause and expression. The rule is that words, in general, are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another can be collected and that other can be ascertained. *Roberts* v. *Roberts,* 140 Ill. 345; *Bates* v. *Gilbert,* 132 id. 287.

Technical words are given their legal effect even though the testator use inconsistent words, unless those

inconsistent words make it perfectly clear that the testator did not mean to use the technical words in their proper sense. *Griswold* v. *Hicks*, 132 Ill. 494; *Frances' Appeal*, 75 Pa. St. 220.

The main object in the construction of a will is to ascertain the intention of the testator as expressed in the instrument, and that intention must prevail unless inconsistent with the rules of law. *In re Cashman*, 134 Ill. 91.

In case of a supposed ambiguity appearing upon the face of the will, parol evidence is not admissible to supply or contradict, or enlarge or vary, the words of the will or to explain the intention of the testator,—and this even where a memorandum draft of such supposed intention is found with the will. *Pennsylvania Co.* v. *Bauerle*, 143 Ill. 459; *Wentworth* v. *Reed*, 166 id. 139; *Lurie* v. *Radnitzer*, 166 id. 609.

The true inquiry is, not what the testator meant to express, but what the words used by him do express. *Burks* v. *Lee*, 76 Va. 389; *Stokes* v. *VanWyke*, 83 id. 724.

An executor who takes nothing personally by way of devise or bequest, but is merely required to sell the property and distribute the proceeds, takes only a naked power, without interest. *Connelly* v. *Sullivan*, 50 Ill. App. 627; 4 Kent's Com. 320; *Chasy* v. *Gowdy*, 43 N. J. Eq. 95; *Derr* v. *Young*, 23 N. J. L. 478; *Reed* v. *Underhill*, 12 Barb. 113; *Downing* v. *Marshall*, 23 N. Y. 366.

Powers are never imperative. They leave the act to be done at the will of the party to whom they are given. Trusts are always imperative, and are obligatory upon the conscience of the party interested. *Attorney General* v. *Downing*, Wilm. 1; *Stanley* v. *Colt*, 5 Wall. 119. .

Aliens are under the like disability as to uses and trust arising out of real estate. Nor can an alien be a *cestui que trust* but under the like disability. 2 Kent's Com. 62; *Attorney General* v. *Sands*, 3 Ch. Rep. 20; Gilbert on Uses, 86, 404; Com. Dig. tit. "Alien;" *Hubbard* v. *Goodwin*, 3 Leigh, 532; *Downing* v. *Marshall*, 23 N. Y. 366; *Ham-*

*mckin* v. *Clayton,* 2 Woods, 336; *Atkins* v. *Kron,* 5 Ired. Eq. 207; *Trotter* v. *Blocker,* 6 Port. 269; Tiffany & Bullard on Trusts, 3; *Leggett* v. *Dubois,* 5 Paige, 114.

In equity, the trust is the land or thing itself. *Hubbard* v. *Goodwin,* 3 Leigh, 532; 2 Washburn on Real Prop. 465; Lewin on Trusts, (2d ed.) 23; Tudor's Lead. Cas. 274; Williams on Real Prop. 135; 2 Flint on Real Prop. 786.

Equity subjects trusts to the same construction that a court of law does legal estates, and a donee must have capacity to take, whether it is attempted to convey title directly to the party or to another in trust for him. *Atkins* v. *Kron,* 5 Ired. Eq. 267; *Trotter* v. *Blocker,* 6 Port. 269.

Where a power of sale is given to executors by a will unaccompanied by a devise to them, until the power is executed the legal title vests in the heirs. *Reed* v. *Underhill,* 12 Barb. 113; *Todd* v. *Wortman,* 45 N. J. Eq. 723.

There is no such thing as an implied conversion. The true rule is, to constitute conversion there must be an express direction, or a necessary implication of such express direction. 6 Am. & Eng. Ency. of Law, 665.

When the conversion depends on the will or discretion of the executor it will not be regarded as consummated in law until it is consummated in fact. 6 Am. & Eng. Ency. of Law, 664, 665, and cases in notes; *Ducker* v. *Burnham,* 146 Ill. 9; *Cliff* v. *Moses,* 116 N. Y. 144; *King* v. *King,* 13 R. I. 501.

If the executrix is given an option or election to sell, the doctrine of equitable conversion does not apply. *Anwalt's Appeal,* 42 Pa. St. 414; *Haward* v. *Peavey,* 128 Ill. 430; *Baker* v. *Copenbarger,* 15 id. 103; *King* v. *King,* 13 R. I. 500; *Ducker* v. *Burnham,* 146 Ill. 9; *Chew* v. *Nicklin,* 45 Pa. St. 84; *Perot's Appeal,* 102 id. 235; *Scholle* v. *Scholle,* 113 N. Y. 261.

If any devise is illegal or not effective it becomes a resulting trust in favor of the heir-at law. *Orrick* v. *Boehm,* 49 Md. 104; *Chamberlain* v. *Taylor,* 105 N. Y. 185; *Giraud* v. *Giraud,* 58 How. Pr. 175; *Wood* v. *Cone,* 7 Paige's Ch. 471; *Trippe* v. *Frazier,* 4 H. & J. 446; *Rizel* v. *Perry,* 58 Md. 112.

DUPEE, JUDAH, WILLARD & WOLF, for appellees:

There is nothing in the Illinois statutes, or in the policy of alien laws generally, which should require, or even induce, the court to withhold from appellees the proceeds of land because they cannot take land itself. On the contrary, the court should, if possible, so construe the will as to enable appellees to take under it.   Act of February 17, 1851; Act of June 16, 1887; Act of June 19, 1891; Act of May 14, 1897; *Marx* v. *McGlynn*, 88 N. Y. 357; *DuHourmelin* v. *Sheldon*, 1 Beav. 79; *Taylor* v. *Benham*, 5 How. 233; *Craig* v. *Leslie*, 3 Wheat. 563.

A testator is presumed to have drawn his will with reference to the law and to have intended it to comply therewith, and the will should, if possible, be so construed as to be in harmony with the law.   Schouler on Wills, (2d ed.) secs. 466, 469, 489.

A testator is presumed not to have intended to die intestate as to any part of his property.   Schouler on Wills, sec. 490; *King* v. *King*, 168 Ill. 273; *Hawkins* v. *Bohling*, id. 214.

If possible, the will should be given effect.   Schouler on Wills, sec. 488.

The technical sense of technical words must give way if in conflict with the testator's main purpose.   Schouler on Wills, sec. 470.

When a testator directs that his lands be sold and the proceeds distributed, such lands, under the doctrine of equitable conversion, will be considered by the courts as already changed into such proceeds, and subject to the rules of devolution applicable to personalty.   *Glover* v. *Condell*, 163 Ill. 566; Bispham's Eq. (5th ed.) sec. 307.

To effect such equitable conversion the power must be mandatory,—in other words, there must be a positive direction to the executor to exercise the power.   Such mandatory direction need not, however, be express.   It may be implied, and such implication necessarily arises when, as in the case at bar, the power, although in form

only discretionary or permissive, must be exercised in order to carry out the testator's will, it being then a power coupled with a duty or trust. 2 Washburn on Real Prop. p. 323, par. 27; Bispham's Eq. (5th ed.) sec. 312; 1 Jarman on Wills, (6th Am. ed.) 549; 3 Pomeroy's Eq. Jur. (2d ed.) sec. 1160; 2 Lewin on Trusts, 613; 6 Am. & Eng. Ency. of Law, 665; Sugden on Property, 64 Law Lib. 462; *Hunt's Appeal,* 105 Pa. St. 128; Leigh & Dalzell on Conversion, 5 Law Lib. 9, 10; *Penfield* v. *Tower,* 46 N. W. Rep. 413; *Matson* v. *Swift,* 8 Beav. 368; *Cook's Exr.* v. *Cook's Admr.* 20 N. J. Eq. 375; *Master* v. *DeCroismar,* 11 Beav. 184; *Craig* v. *Leslie,* 3 Wheat. 563; *Nickisson* v. *Cockill,* 3 DeG., J. & S. 622; *Ingraham* v. *Ingraham,* 169 Ill. 432; *Tempest* v. *Lord Camoys,* L. R. 21 Ch. Div. 571; *Wurtz* v. *Page,* 19 N. J. Eq. 365; *Cowley* v. *Hartstonge,* 1 Dow. 361; *Earlom* v. *Saunders,* 1 Amb. 240; *Cookson* v. *Reay,* 5 Beav. 22; *Supervisors* v. *United States,* 4 Wall. 435; *Mason* v. *Fearson,* 9 How. 248; *Brokaw* v. *Comrs. of Highways,* 130 Ill. 482; *Davenport* v. *Kirkland,* 156 id. 169; *Roland* v. *Miller,* 100 Pa. St. 47; *Fraser* v. *Trustees,* 124 N. Y. 479; *Lent* v. *Howard,* 89 id. 169; *Power* v. *Cassidy,* 79 id. 602; *Clarke* v. *Clarke,* 24 S. E. Rep. 202; *Vauchamp* v. *Bell,* 6 Madd. 343; *Morse* v. *Morse,* 85 N. Y. 53; *In re Gantert,* 32 N. E. Rep. 551; *Roy* v. *Monroe,* 20 Atl. Rep. 481; *Stallman's Estate,* 2 Pa. Dist. 265; *Fahnestock* v. *Fahnestock,* 25 Atl. Rep. 313; *Delafield* v. *Barlow,* 14 N. E. Rep. 498; *Burrell* v. *Baskerfield,* 11 Beav. 525; *Dodge* v. *Williams,* 46 Wis. 70; *Ramsey* v. *Hanlon,* 33 Fed. Rep. 425; *Chandler's Appeal,* 34 Wis. 505; *Hereford* v. *Ravenhill,* 5 Beav. 51.

In the construction of this will, upon the question of conversion the court properly considered the extrinsic evidence of the legal status of appellees. Jarman on Wills, rule 10; Wigram's Rules of Law, prop. 5; 1 Redfield on Wills, 502; Schouler on Wills, secs. 581, 572, 466, 467, 579; *Marske* v. *Willard,* 169 Ill. 281; *Travers* v. *Morrison,* 28 Ala. 494; *Atkinson* v. *Sutton,* 23 W. Va. 197; *Ernst* v. *Foster,* 49 Pac. Rep. 527; *Smith* v. *Bell,* 6 Pet. 68; *Whitcomb* v. *Ryan,* 156 Ill. 116; *Bills* v. *Putnam,* 15 Atl. Rep. 139; *Colton*

v. *Colton,* 127 U. S. 309; *Hoyt* v. *Hoyt,* 85 N. Y. 142; *McCorn* v. *McCorn,* 100 id. 511; *Decker* v. *Decker,* 121 Ill. 341; *Huff-man* v. *Young,* 170 id. 290; *Kaufman* v. *Breckinridge,* 117 id. 305; *Lomax* v. *Shinn,* 162 id. 124; *Strain* v. *Sweeney,* 163 id. 609; *Ingraham* v. *Ingraham,* 169 id. 461.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

This was a bill filed by Thomas Greenwood, one of the appellants, for the partition of the real estate of Josiah Greenwood, who died testate December 13, 1894. His will, which was admitted to probate, is as follows:

"I, Josiah Greenwood, of the city of Chicago, in the county of Cook and State of Illinois, being sixty-seven years of age and of sound mind and memory, do make, publish and declare this my last will and testament:

"*First*—I direct that all my just debts and funeral expenses be paid and a proper tombstone erected at my grave.

"*Second*—I give and devise to my wife, Elizabeth Greenwood, one-third of all my real estate and her legal interest in all my personal property, to have and to hold forever, free and clear of any claim or control from any person whomsoever.

"*Third*—The rest and residue of my estate I give and devise to the children of my deceased brother, Jacob Greenwood, who may be living at the time of my decease, share and share alike, to have and to hold to them and their heirs forever.

"*Lastly*—I hereby revoke all former wills by me made, and appoint my wife, Elizabeth Greenwood, sole executrix of this my said will, giving and granting unto her full power to take possession of and in all things manage and control my said estate during her executorship, the same as I could if living, with power to sell and convey, divide and distribute the same, and in the same manner that I could were I living and distributing the same, but the proceeds to be by her given to my legatees; and I hereby direct that letters issue to her without bonds, I expressly waiving the same.

"Witness my hand and seal, December 9, 1894.

JOSIAH GREENWOOD.    [Seal.]

Witnesses: E. F. Runyan, E. D. Runyan."

The testator left no children, but left his widow, Elizabeth Greenwood, and certain nephews and nieces and

descendants of nieces, surviving him. Aside from his widow, these nephews and nieces and their descendants were his only heirs-at-law, and the appellants Thomas Greenwood, Mary Moore, Alfred Latcham, Francis G. Latcham and Alice N. Latcham were the only ones of such heirs who were citizens of the United States and capable of taking lands in this State by descent or devise, as the statutes of this State then were, all other descendants of the deceased being non-resident aliens. The appellees, Charles Herbert Greenwood, Sarah Jane Greenwood and Lizzie Clough, are the children of Jacob Greenwood, a deceased brother of the testator, mentioned in the third clause of the will. They were also non-resident aliens, and were residents and citizens of Great Britain.

The bill charged that the legatees and devisees mentioned in the third clause, the appellees here, were non-resident aliens, and were incapable of taking, by such devise, any of said real estate under the act of the legislature entitled "An act in regard to aliens, and to restrict their right to acquire and hold real and personal estate, and to provide for the disposition of the lands now owned by non-resident aliens," approved June 1, 1887, and in force July 1, 1887; that said devise to them was void and a cloud upon the title of the complainants, and that said real estate so attempted to be devised in and by the said third clause descended as intestate estate to the complainants, as the heirs-at-law and only heirs-at-law of the said deceased capable of inheriting or taking the same. The appellees answered and also filed their cross-bill, in which they admitted that they were non-resident aliens, but claimed that two-thirds of said estate after payment of the expenses of administration was by the provisions of the will to be sold by Elizabeth Greenwood, the executrix, converted into money and the proceeds paid over to them as legatees; that it was obligatory upon her to so convert said two-thirds and distribute to them, and

that the same should be treated as converted into personal property at the death of the testator, she holding the same in trust for them. The cross-bill prayed for a construction of the will, and for an order to compel the executrix to execute the power conferred on her by the will to sell said real estate and pay over to them the proceeds. Issues were made on the bill and cross-bill and the cause referred to the master, who reported the evidence and his conclusions to the court. Exceptions were sustained to his report, and the chancellor entered a decree dismissing appellants' bill and sustaining the allegations of the cross-bill, and ordering the executrix to execute the power of sale as prayed.

It is clear, and is not controverted, that appellees, being non-resident aliens, were incapable of taking the lands in question under the will, and so far as the will must be regarded as a devise of real estate to them, it is inoperative, and unless the doctrine of equitable conversion applies and the will can be fairly construed as a bequest of personal property to the appellees the decree is wrong and should be reversed.

In the construction of wills it is the duty of courts to ascertain the intention of the testator as expressed in the instrument, and to so construe the will as to give effect to that intention, if it can be done without violating any established rule of law or public policy. It is perfectly clear, from the mere reading of the will, that it was the intention of the testator that the appellees should receive all the rest and residue of his estate after the payment of his debts and funeral expenses and the cost of a proper tombstone to be erected at his grave, and after his wife should have received the personal property which she was entitled to by law and one-third of his real estate.

Counsel for appellants say, that as the widow was entitled, under the statute, to all the personal property, there was nothing left for appellees but real estate, and this they could not take, and that it therefore descended

to appellants as intestate estate. This is certainly true, unless it appears from the will that it was the intention of the testator to convert such real estate,—that is, all not devised to his wife,—into personal property, and to have the proceeds paid over to the appellees. It will be presumed that the testator knew the laws of the State, and that he knew he could not devise his real estate to non-resident aliens. It is also a presumption of law that he did not intend to die intestate as to a part of his property. While these presumptions cannot, of course, prevail over the plain meaning of the will, they are important aids in its interpretation and construction. It is to be seen from the will, that, aside from the interest which his widow would take by law in his personal property, it devises to her, by the second clause, one-third of his real estate absolutely, but in the third clause, while it is amply sufficient to dispose of real estate, it does not use that term, but gives and devises all the rest and residue of his estate to the children of Jacob Greenwood. The word "estate" has a broad signification, and would, of course, be sufficient to pass personalty. But as all of the personal property had been given to his widow he had no personal estate to give to appellees, unless, as indicated in the last clause of his will, he intended to convert the remaining two-thirds of his real estate into personalty, to be distributed or paid over to his legatees, the appellees,—and this would seem to be the most reasonable construction to be given to the instrument. The will should be construed so as to give effect to all its parts, if it can be done, and not so as to render some of its provisions invalid or ineffectual. As a gift of the proceeds of the sale of real estate to be made by the executrix, the third clause violates no law and is valid, while as a devise of real estate it violated the statute of this State in force at that time, and is therefore invalid.

Appellants contend that the third clause contains the usual and proper terms and provisions for a devise of real

estate and should be so construed, and that said clause, devising absolutely two-thirds of the real estate to appellees, must prevail in construing the will, and that the last clause, being repugnant to it, is void for such repugnancy, except so far as it confers power on the executrix to sell lands to pay debts. The evidence showed that the testator owned but little personal property but that his indebtedness was considerable, and that it would be necessary to resort to the real estate to pay debts, and it is insisted that the last clause will be given its full effect by confining the power of the executrix to sell, to that purpose. We are of the opinion that appellants' contentions cannot prevail. In the first place, it is said that the third clause is an absolute devise of real estate and is therefore void, and the real estate, as such, descended to appellants as intestate estate. We have said that as a devise of real estate it is void; but if it be so treated we are unable to see how a void provision could also render a subsequent provision void on the ground of repugnancy. If the third clause is void it cannot operate to destroy a subsequent clause simply because such subsequent clause is repugnant to such third clause. The effect of the argument of the appellants on this branch of the case is to treat the third clause as in full force and valid until it has destroyed all repugnant subsequent provisions, and then to declare it absolutely void for being in conflict with the laws of the State. Let it be supposed that the third clause had devised two-thirds of the realty in express terms to appellees absolutely, and that the last clause had in express terms devised it to the executrix in trust to sell, with directions to distribute or pay over to appellees the proceeds, then, it appearing that appellees were non-resident aliens, the third clause would be inoperative and void; but it is not easy to see how it could be reasoned out that such void clause could work the destruction of the last clause, which, except for its conflict with the third clause, would be con-

cededly valid. And the effect would be the same whether such conflict appeared directly and expressly, or from necessary implication.

If, then, as contended by appellants, the third clause must be construed as a devise of real estate only, it would be void but would leave the last clause in full force. But we are of the opinion, as before stated, that the third clause is broad enough, and so far valid, to carry the proceeds of the sale of real estate, as personalty, to these non-resident aliens, the appellees, if such sale and distribution are sufficiently provided for in other parts of the will,—in other words, if the will effects an equitable conversion of said two-thirds of the real into personal property,—and this we regard as the only question of serious importance in the case.

The purpose of the statute was not to inhibit aliens from becoming beneficiaries in wills or other written instruments, but from acquiring or holding title to real estate in this State. For the purpose of proving their right to inherit as heirs-at-law, appellants themselves proved the alienage of appellees, as they had the right to do; but we cannot agree to their contention, nor to the application of the cases cited by them, that such alienage can not be considered by the court in construing the will, to ascertain the intention of the testator. It is well settled that in construing a will courts will endeavor to put themselves, as far as possible, in the position of the testator, and will hear extrinsic evidence of the circumstances surrounding the testator at the time he made the will, in order to understand the language employed by him in the instrument. (Schouler on Wills, sec. 581; *Kaufman* v. *Breckinridge,* 117 Ill. 305; *Lomax* v. *Shinn,* 162 id. 124; *Ingraham* v. *Ingraham,* 169 id. 432.) Thus, it was said in *Ingraham* v. *Ingraham,* that "one of the established rules for the construction of a will is, that the court will look at the circumstances under which the devisor makes his will, as, the state of his property, of his family, and the

like." Such evidence cannot be received to reform, vary or contradict the will, nor to prove some intention of the testator not found in the will itself, but for the purpose of enabling the court called upon to construe the will, to better understand what the testator meant by the language used in the written instrument.

There is nothing in *Wentworth* v. *Read*, 166 Ill. 139, in conflict with this rule of construction, as supposed by counsel. The substance of that decision is, that where an intention to make legacies a charge upon land is not shown by the will in express terms, or cannot be implied from its language, extrinsic evidence cannot be heard to prove that such, in fact, was his intention, or that, because of the condition of his estate, he must have had such intention. It was not denied in that case that the court could hear extrinsic evidence of the circumstances surrounding the testator at the time he made his will, where there was any language in the will to be construed, and when properly construed would itself show the intention of the testator. It is, of course, well understood that the intention of the testator to be ascertained and carried into effect by the courts is the intention appearing from his will, and not that which might appear *aliunde*. The will did not state the amount, character or description of the testator's property, nor the names, residence or citizenship of the children of the testator's brother, Jacob, mentioned in the third clause. It was clearly competent to make this proof, and to prove that these legatees were non-resident aliens and that the testator knew that fact. It will be presumed that he knew the law, and knew that they could not take the title to the real estate. But this proof would have been of no benefit to appellees without language in the will fairly implying an intention to convert the real estate into money and distribute to them the proceeds. While appellees could not take title to the real estate, yet if the fair construction of the will is that the executrix is directed to sell such real estate and

distribute the proceeds to them, as legatees mentioned in the will, then the gift to appellees is one of personal property and not of real estate. "By equitable conversion is meant a change of property from real into personal or from personal into real, not actually taking place but presumed to exist only by construction or intendment of equity." (Bispham's Eq. sec. 307.) Equity regards that done which ought to be done. If, therefore, the provisions of the will made it the duty of the executrix to sell the lands and pay over the proceeds to these legatees, equity will regard the conversion of the lands into money as having taken place at the death of the testator, and appellees would take the proceeds as personal property. (*Glover* v. *Condell*, 163 Ill. 566.) And it is well settled, also, that this duty may be implied from the terms and provisions of the will, and while it must clearly appear it is not necessary that it be expressly enjoined. Pomeroy's Eq. Jur. sec. 1160; Jarman on Wills, 549; 6 Am. & Eng. Ency. of Law, 665.

As we have seen, the third clause is abundantly sufficient to give the proceeds of this real estate to the legatees therein mentioned as personal property, in case there is an equitable conversion; as a devise of real estate, however, this clause is inoperative. But the last clause makes provision for the sale of this real estate and the payment of the proceeds to the legatees,—that is, to those mentioned in the third clause,—for under that clause they are both devisees and legatees. Now, the intention of the testator cannot be carried into effect without the execution of this power of sale, and it appears, we think, from the will, that the testator intended that it should be executed. He authorizes his executrix to take possession and in all things manage and control the real estate the same as he could if living, giving her power to sell and convey the same in the same manner that he could if living, "but," using the language of the will, "the proceeds to be given to my legatees." This is fairly equivalent to

a direction to his executrix to pay the proceeds to his legatees,—that is, to the legatees mentioned in the third clause,—and this she could not do without executing the power of actual conversion, which was fully conferred. It would thwart the intention of the testator to hold that this power to sell was merely discretionary, and that she could execute it or not, as she might elect. Considering the entire will, and in the light of the circumstances surrounding the testator when it was made, we are of the opinion that the duty to sell, convert into personalty and pay over and distribute to the legatees was intended to be imposed, in terms imperative, upon the executrix. It was said in *Cook's Exr.* v. *Cook's Admr.* 26 N. J. Eq. 375, that "if the direction of the will as to the proceeds requires a sale, it is equivalent to a positive direction to sell, and the land is deemed personal property from the death of the testator." It will be noticed that the power granted to the executrix in the respect mentioned is full and complete, and its exercise is not limited by or referred to her discretion. In such a case the mere absence of words of express command or direction ought not be held to render the exercise of the power discretionary, when to so hold would defeat the intention of the testator as it appears from the whole will. (*Hunt's Appeal*, 105 Pa. St. 128; *Penfield* v. *Tower*, 46 N. W. Rep. 413; Lewin on Trusts, *613; *Master* v. *DeCroismer*, 11 Beav.184; *Ingraham* v. *Ingraham*, *supra; Fraser* v. *Trustees*, 124 N.Y. 479; *Lent* v. *Howard*, 89 id.169; *In re Gautert*, 32 N. E. Rep. 551.) Full power having been granted to and the duty imposed on the executrix to sell and convey said two-thirds of the real estate for the purpose stated, a trust was created, and the title passed to her for the purposes of the trust. *Hale* v. *Hale*, 146 Ill. 227; *Wicker* v. *Ray*, 118 id. 472.

The case was correctly decided below, and the decree will be affirmed.                                   *Decree affirmed.*