No. 33,886

GENEVA BLAKE-CURTIS and WILMA BLAKE-JENNINGS, *Appellants*, v. EARL M. BLAKE and GRACE IDA O'LOUGHLIN et al., *Appellees.*

(89 P. 2d 15)

Opinion filed April 8, 1939.

*Glenn Porter, Getto McDonald, Dwight S. Wallace* and *William Tinker*, all of Wichita, for the appellants.

*H. W. Stubbs,* of Ulysses, and *W. E. Eddy,* of Hugoton, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action to construe a will and to partition real estate. Judgment was for certain defendants. Plaintiffs appeal.

' · The plaintiffs are two daughters of Clarence S. Blake. The defendants are his other heirs at law and the executrix of his estate.

After alleging the addresses of the parties, the petition alleged that Clarence S. Blake died on or about June 27, 1927, testate, and that his will was admitted to probate; that the two executors named in the will refused to qualify, and the defendant, Clara Morgan, was named as administratrix of the will; that by the terms of the will the testator bequeathed to certain persons named the sum of five dollars each and directed that this sum be paid by the executor; that the testator devised his property in the town of Ulysses to Nora Christian for her natural lifetime, the remainder to go to her children surviving her; that the testator devised to the plaintiffs certain described property in the town of Moscow in equal shares. The petition then alleged that the testator further provided that his ranch be taken charge of by his executor; that the executor should control such ranch in its entirety, preserve it, make new loans, if necessary, to pay off any loans existing at his death, and manage it to the best advantage of the heirs, and was not to sell it until he could receive $20 an acre, or $40,000 altogether, for it, and in the event the property should be sold the executor was directed to pay to each of plaintiffs thirty percent of the purchase price and ten percent was to be given to Clara Morgan, ten percent to Mearl Clarence Blake, and ten percent to Galena Arnold; that the ten percent bequeathed to Galena Arnold be invested to the best business advantage of Galena so that she might draw the profits from it during her lifetime and at her death it should go in equal shares to her children surviving her; that the will further provided that five percent of the proceeds of the sale of the land should be paid to Nora Christian as her own and five percent be used by the executor for the purpose and efficient administration of all the estate, and whatever remained should go to Charles H. Blake as his own. The petition further alleged that the land had been in the possession of the executor for about ten years; that the executor had never paid to the devisees any money as rents or profits from the land; that the lands were potential oil and gas lands, and attempts had been made to lease this land, but Earl M. Blake and other heirs always claimed an undivided equal interest in the land and had always refused to sign an oil-and-gas lease unless the lease was succeeded by an agreement of all the children to share equally the proceeds that might arise. The petition further alleged that plaintiffs were the owners

of the property in Moscow, but that Clara Morgan claimed by the terms of the will to be entitled to it; that plaintiffs were by provision 6 of the will the.owners of sixty percent of certain lands, describing them, known as the testator's Grant county ranch; that Clara Morgan and Mearl Clarence Blake were the owners of an undivided ten percent of this land each; that Galena Arnold was the owner of a life estate in ten percent of this land; that Charles Ray Arnold and Betty Ailene Arnold, minor children of Galena Arnold, were the owners in fee simple, subject to the life estate of their mother, of an undivided ten percent of the land; that Nora Christian was the owner of five percent of the land; and that no other persons have any right or interest in the land. The petition further alleged that the provisions of paragraph 6 of the will, wherein the testator attempted to place an executor in charge of the land and to retain management and control of it until it could be sold for $20 an acre, or $40,000, was void for indefiniteness and uncertainty, and as a violation of the rule against perpetuities, and as a violation of the rule against restraints on alienation; that a time when the executor could sell the property for $40,000 might or might not come, and that the will should be construed so as to vest in plaintiffs thirty percent thereof to each, and Clara Morgan, Mearl Clarence Blake and Galena Arnold were each entitled to ten percent of the land, and Nora Christian was entitled to five percent of the land, and Charles Blake was entitled to five percent of the land, subject to the cost of administration; that controversies had arisen in good faith as to the true construction to be given the will. A copy of the will was attached.

The prayer of the petition was that the will be interpreted; that the provision of the will with respect to the possession and management by the trustee or executor and the time of such trusteeship and the prohibition of the sale of the same until it could be sold for $20 an acre, or $40,000, could be obtained be held void; that it be decreed that plaintiffs and Clara Morgan, Mearl Clarence Blake, Galena Arnold, Charles Ray Arnold and Betty Ailene Arnold be decreed to be the owners of the property.

The prayer was further that the plaintiffs' title to thirty percent each of the property be quieted and confirmed in them; that they have partition of the land in kind, as provided by law.

We are concerned with paragraph 6 of the will. That paragraph is as follows:

"I further devise and direct as follows, to wit: That my ranch in Grant county, Kansas, in section seven (7), section eight (8), nine (9), sixteen (16), seventeen (17), twenty (20), twenty-one (21), twenty-two (22), twenty-three (23), all in township thirty (30) and range thirty-six (36), together with all improvements thereon, I direct that my executor take immediate charge and control of said ranch in its entirety, preserve the same, make new loans if necessary to pay off any loan or loans existing at my death, and to manage in all respects the same, to the best advantage of my heirs; and not to sell the same until he can receive therefor the sum of twenty dollars ($20) per acre, or the aggregate sum of forty thousand ($40,000) dollars, to be used as I direct. That is to say, my executor shall give to the said two younger daughters, to wit: Geneva and Wilma Blake, thirty percent (30%) each thereof.

"I direct that ten percent (10%) thereof be given to my daughter, Mrs. Clara Morgan, of Moscow, Kan., and ten percent (10%) thereof to my son, Mearl Clarence Blake, Los Angeles, Cal., and ten percent to my daughter, Mrs. Galena Arnold, Wichita, Kan., the said sum to be so invested by my executor safely and to the best business advantage, so that said daughter Galena may draw the rents, profits or interest thereon and thereof during her lifetime, and at her death, the same shall go in equal shares to all her children surviving her. And, in the event that said daughter Galena do not survive me, then I direct that the said investment for her be given, the proceeds thereon and therefrom, in equal shares to all her children so surviving her, and that the said ten percent be handled and invested to best advantage by my executor for said children as aforesaid, until the youngest one of her children shall become of age, 21 years old; then the said amount of the principal shall be equally divided among the said children in equal shares, each to each. And that five percent (5%) thereof, be given at the time of sale to said daughter, Mrs. Nora Christian, as her own; and the remaining five percent (5%) is to be used judiciously by my executor, for the proper and efficient administration of all the said estate as aforesaid; and whatever there remains as a residue of the said last-mentioned five percent thereof, shall go directly to my son, Chas. H. Blake, as his own."

A stipulation was entered into whereby it was provided that an oil-and-gas lease might be entered into and the money be used to pay any liens which might be on the land.

Certain of the defendants filed an answer admitting many matters about which there could be no dispute. These defendants admitted that the provision in paragraph 6 of the will, which attempted to restrain the sale of the place until it could be sold for $20 an acre, was void. The answer further admitted that controversies had arisen. The answer was a general denial of all allegations not specifically admitted. The answer further alleged that Clarence S. Blake was the father of plaintiffs and certain of defendants; that Blake and wife moved to Grant county in an early day; that this ranch was the bulk of his estate and was accumulated

partly through the efforts of certain of the defendants for whom no substantial provision was made in the will. The answer further al-leged that Clara Morgan as administratrix had caused the land to be farmed; that at the time of his death Clarence S. Blake was in debt and the property encumbered; that the debts of the estate had been reduced in proportion to the amount of revenue received; that Clara Morgan had received no compensation for her services as executrix and none of the heirs, legatees or devisees had received anything from their inheritance. The answer further alleged that defendants, and especially Earl M. Blake and Carl H. Blake, had advanced funds from their own resources with which to pay obligations of the estate and to maintain the ranch. The answer further alleged that paragraph 6 of the will was void for indefiniteness and uncertainty, as a violation of the rule against perpetuities, as a restraint on alienation, and further that it imposed a condition that was practically incapable of fulfillment. The answer further alleged that as to the lands mentioned in paragraph 6 of the will, it was wholly void and inoperative, and as to that property Clarence S. Blake died intestate and the property descended in equal shares to the eleven children who were parties to the action. The answer further alleged as follows:

"Defendants further alleged that by the terms and provisions of said will, and particularly of section VI thereof, the real property in said section mentioned was not devised nor left to any person, no person was vested with the power of sale thereof, nor was it provided that the rents, incomes and profits thereof should be paid to any person or persons, and defendants further allege that this court has no power or authority to write into said will a provision providing for the disposition of any of the property of said testator."

The answer further alleged that it would be inequitable for the land to be divided in the manner prayed for by plaintiffs.

The prayer was that paragraph 6 of the will be declared void and inoperative as to the real estate named therein and that the court decree that the parties to the action take the real property in equal shares.

Earl M. Blake filed a separate answer. In this answer he admitted the general allegations about the will, especially that paragraph 6 was void for the reasons given, and that it was void for the reason that it imposed a condition on the sale which was practically incapable of fulfillment; that Clarence Blake died intestate. The answer further alleged that at the time of his death Clarence S. Blake was not the owner of the entire estate in certain described

land amounting to about 480 acres, but that he was the owner of only an undivided one-half interest therein; that at the time of his death testator and Earl M. Blake owned such in equal shares; that Earl M. Blake was the owner of an undivided one-half interest in the real estate in question.

The prayer was that an undivided one-half interest in the 480 acres be set apart for him as his individual property, and that if partition be granted that he be awarded, in addition to his interest in the remaining property, an undivided one-half interest in the 480 acres. The prayer further asked for a judgment about as prayed for by the other defendants.

Charles Ray Arnold and Betty Ailene Arnold filed a general denial and asked the court to render such judgment as would protect their interests. Plaintiffs replied by way of a general denial.

In answer to the cross petition of Earl Blake, the plaintiffs denied that he was the owner of an undivided one-half interest in the real estate described in this cross petition. The answer further alleged that if these lands were contracted for from the Santa Fe Land Improvement Company in the name of Earl Blake that the entire purchase price was paid by Clarence S. Blake and he had been in open and notorious possession of it for many years prior to his death; that the real estate in question was regarded by testator as a part of his ranch at the time he executed his will, and the answer of Earl Blake was a contest of that will, and the statutes of nonclaim applicable to will contest cases barred Earl Blake from asserting title to this land.

The prayer was that Earl M. Blake take nothing by this answer and cross petition.

To this answer Earl M. Blake filed a reply in which he alleged first a general denial. The reply further set out a paragraph from the petition of plaintiffs, as follows:

"That controversies in good faith have arisen among these party litigants as to the true constructions and interpretation of said will as to the rights of the respective parties thereunder and that the same should be construed and interpreted by this court as to the court may seem proper."

The reply then alleged that the plaintiffs had asked that the will be interpreted and that certain parts of it be held null and void, and by reason of this the plea of the statute of limitations was not available to plaintiffs.

With the issues thus made up the case was tried before the court without a jury. At the outset a stipulation was entered into with

reference to the land in which Earl M. Blake claimed an interest. By this stipulation it was agreed that the record title to the real estate to which Earl M. Blake claimed an undivided one-half interest stood in the name of the Santa Fe Land Improvement Company; that there was an outstanding contract of purchase to J. R. Stubbs and an assignment of this contract to testator and Earl M. Blake, dated March 22, 1918; that the purchase price in that contract had been fully paid in the amount of $5,950.93, of which $2,-199.75 was paid before the death of Clarence S. Blake and $3,751.18 was paid subsequent to his death; that the records did not show from whom the $2,099.75 was received, but did show that $100 was paid by Clarence S. Blake on January 27, 1927, and that all payments subsequent to the death of testator in the sum of $3,751.18 were received from Clara Blake Morgan, the administratrix; that $220 of the amount paid by her was received from Earl M. Blake; and that with the exception of this $220 all the money paid by Clara Blake Morgan on the contract came from the lands described in plaintiffs' petition; and that the total amount paid by Earl M. Blake amounted to $1,628.75.

It will be noted that all parties agreed that the provision in paragraph 6 of the will that the land should not be sold until it would bring $20 an acre, or an aggregate of $40,000, was void because it was a violation of the rule against perpetuities and a restraint on alienation. Nevertheless, witnesses were put on the stand who testified that this land could not have been sold at any time since the death of testator for that amount, and could not be sold in the next ten years for that amount. There was also some testimony as to the amount of this land that was in cultivation and the amount in pasture. The trial court rendered a written opinion. The court stated that plaintiffs claimed each to be the owners of thirty percent of the land and asked that the provision that the land should not be sold for less than $40,000 be held void. The court then pointed out a statement in the brief wherein counsel said:

"I can find no ground upon which to say that section six vests an estate in the executor. There is nothing granted to him except the power."

The trial court agreed with this statement and said, "He is given the power of sale contingent upon procuring $20 per acre, or an aggregate sum of $40,000. This provision being void, the power of sale must necessarily fall with it." The trial court further held:

"It would seem that the title to the ranch involved in this action passed to the heirs of Clarence S. Blake, deceased, subject, however, to sale by the ex-

ecutor for the price stated. Since the clause permitting sale only for such amount is void and must be deleted from the will, the title now stands in the heirs of said Clarence S. Blake in the proportions provided by the statute of descent and distribution. The will provides no method by which such percentage may be changed or such persons divested of title, and it is the court's opinion that said real property passed to such heirs in such proportion as intestate property upon the death of Clarence S. Blake.

"The plaintiffs have asked for partition, which it is my opinion they are entitled to have if they so desire."

As to the claim of Earl M. Blake, the court stated in the opinion that if paragraph 6 of the will had been valid then no contest of the will was brought within the statutory period and the claim was barred, but since it developed that paragraph 6 was void then the court was confronted with a situation not contemplated during the trial and a decision on that judgment was reversed.

In the journal entry of judgment the trial court recited many of the essential facts about as they have been detailed in this opinion— that all the land mentioned by the testator as "my Grant county ranch" included certain described sections and quarters and that at the time of the death of testator he owned all the land described, except certain described sections and quarter sections containing about 480 acres, of which the court decreed Earl M. Blake to be the owner of an undivided one-half interest, subject to a lien of $430.26. The court further found that plaintiffs were the owners of the Moscow property; that paragraph 6 of the will was void; that neither at the time of the execution of the will, nor at any time since, could the property have been sold for $40,000. The court further found that when clause 6 was stricken from the will as violating the rule against perpetuities and restraints on alienation the whole will of Clarence Blake with reference to the Grant county ranch was rendered void and as to such lands Blake died intestate. The court found that no contest of the will was filed until the answer of Earl M. Blake was filed; that had paragraph 6 of the will been valid the action would have been barred, but that this provision of the will was void. The court further found that the plaintiffs, naming them, and certain defendants, who were the heirs at law of Clarence S. Blake, were the equal owners of the land described except the 480 acres in which Earl M. Blake claimed an undivided one-half interest, and there was a lien on the above land in favor of the estate in the amount of $430.26. The court found that the land was subject to partition and parties were entitled to partition if they so desired. As to the partition proceedings, the case was continued until the ap-

peal from the decision of the trial court could be had on the question of the effect of the will of Clarence S. Blake and the claim of Earl M. Blake. Judgment was entered on these findings.

It will be seen that the result of this judgment was that the two plaintiffs, instead of getting thirty percent each of the ranch, receive only an equal share in it along with the other heirs. Their argument here then is that the part of paragraph 6 that gave them each thirty percent of the proceeds of the sale of the ranch is valid, while only the part which restricts the sale of it until it can be sold for $40,000 is void. It is the argument of defendants that the will makes no disposition of the property except to give the executor the void power of sale, and that to hold that the will passed title to the property to the beneficiaries would be in effect to write a new will.

In our consideration of this case we shall first deal with the position taken by the trial court that the will only gave the executor a bare power of sale and that no estate was vested in him. A question similar to this was dealt with in *Johnson v. Müller*, 149 Kan. 128, 86 P. 2d 569. In that case the clauses of the will with which we are concerned provided first that the income from all of testator's property should be paid to his widow; that after her death this income should be divided equally between a son and daughter; that after the death of the son and daughter half of the estate should go to the heirs of each, and finally a clause, as follows:

"The trustees shall have all power and duties of owners for the operation, management and protection of my estate, real, mixed and personal, except they shall not be empowered to incur debt, negotiate a mortgage on or sell any of the farm land owned by me at the time of death during the life of my children; but they shall be empowered and have authority to divide my farm land equally between my daughter, Edith Celestine Muller, and my son, Leon Carl Johnson, or their heirs above specified." (p. 129.)

The mother and the son and daughter were named executors and trustees. After the death of the mother the son brought an action contending that under a proper construction of the will his mother was given a life estate in all the property and he and his sister were given the remainder in fee, free from the claims of any other person. This contention was resisted by two minor children of the sister. Partition was prayed for.

The trial court held, among other things:

"And that if the words used by him were alone insufficient to expressly convey the title to the trustees named, then such a trust was created by reason

of the nature of the duties to be performed by the trustees; that the title to the property was in Leon Carl Johnson and Edith Celestine Muller as trustees of the testamentary trust created by the will and not in fee simple." (p. 130.)

On appeal this court said:

"And finally, appellants question the holding of the trial court that a trust was created by the will. It is true there was a failure on the part of the testator to specifically devise the property to the trustees, but that he prescribed the powers and duties of the trustees is clear." (p. 133.)

Thompson on Construction of Wills, p. 715, is quoted in that opinion, as follows:

"Where there is no express devise to the trustee, it must appear that the testator intended he should take an estate, and where from the nature of the duties to be performed, it appears that the taking of an estate is necessary, the intention of the testator will be presumed; and when the intention is clear, an estate in the trustee will vest by implication."

This court also considered this question in *Grossenbacher v. Spring*, 108 Kan. 397, 195 Pac. 884. In that case the will contained the following clause:

"Third: It is my will and I desire and I hereby expressly direct that all the real property that I may own at my death and all the proceeds of my personal property after paying my just debts and funeral expenses and the bequest to my daughter as herein directed, shall be held in trust by the executor or administrator of this my last will and testament for the use and benefit of my four grandchildren, John, Fritz, Sophia and Marguerite Grossenbacher, or the survivors of them, during their natural lifetime, but only the net income from said real and personal property thus held in trust shall be paid to my grandchildren or their survivors in equal shares, said income to accumulate in the hands of trustee until each of said grandchildren become of age, when its respective share is to be paid to it, *and thereafter to be paid annually, and at the death of the last survivor of my said four grandchildren all of the estate held in trust, both real and personal,* shall be equally divided between the heirs of my said grandchildren being issue of their bodies." (Italics ours.) (p. 398.)

After the children became of age they brought an action in which they prayed that the court should hold that the trust created by the will had become a passive trust instead of an active one and that the estate created was an estate tail which they were at liberty to terminate by conveyance. On the question with which we are interested this court said:

"If the trustee has no duty to perform towards this estate, the trust has become passive, otherwise it is active. Here the grandchildren are only to receive the net income, and it is to be paid to them annually. It is therefore the duty of the trustee to manage this estate so that it will produce an income.

It is necessarily his duty to preserve the estate from waste, to rent or otherwise render the estate productive of income, to pay the taxes, to conserve the property for the benefit of those lawfully entitled to receive the remainder estate upon its division after the death of all the grandchildren. Obviously these are the duties of the trustee. By necessary implication, the powers and duties of a trustee are of whatever scope is requisite for the effective execution of the purposes of the trust. (39 Cyc. 207, 208.) And these are duties calling for action, not passive inaction." (p. 399.)

In clause 6 of the will we are considering, the testator first used the following language:

"I further devise and direct as follows, to wit: That my ranch in Grant county, Kansas . . . together with all improvements thereon, I direct that my executor take immediate charge and control of said ranch in its entirety, preserve the same, make new loans if necessary to pay off any loan or loans existing at my death, and to manage in all respects the same, to the best advantage of my heirs. . . ."

Then follows the direction as to the sale of the ranch. So far, the testator directed his executor to do everything with the ranch that he would have done had he been alive. Just how any more powers and authority could have been conferred on the executor does not appear. The testator undoubtedly knew that a ranch as extensive as this one could not be sold over night. Had he intended that this should be done there would have been no necessity for the provision as to new loans nor for the direction to manage the estate to the best advantage of his heirs. Nor are these the only provisions in the will bearing on this question. After the provision as to sale, the executor is directed to pay thirty percent of the proceeds to each of the two daughters named. That took sixty percent of the proceeds. He then directs that ten percent be paid to another daughter and ten percent to a son, naming him. It should be noted that these amounts were to be paid direct to the persons named. This will then directs that ten percent was to be taken and invested to the best business advantage so that a daughter named Mrs. Galena Arnold might draw the income from this money during her lifetime, and at her death the property should go in equal shares to her children surviving her. There was provision made, also, for keeping this share intact for the children of this daughter in event the daughter should die before the testator. There was then a provision that five percent should be paid to another daughter and five percent was to be used in the efficient management of the administration of the estate, and whatever remained was to go to a son, naming him.

The reason these provisions of the will have been set out here in so much detail is that it might be pointed out that the testator had a definite idea as to just what he wanted done with the proceeds of the sale of this ranch when it was sold, and further to point out that the arrangement with reference to Mrs. Galena Arnold was a trust. There can be no question about that. Furthermore, the trustee was to be the same person to whom the power of management and sale of the ranch was given, and the trust was to last until the death of Galena, or in case she died before the testator, until her youngest child should become of age. The language used in designating a person to do certain things in a will is not alone controlling. The real test is the powers and duties actually given him when all the provisions of the will are considered. If the powers and duties of a trustee are created by the will then he is a trustee, no matter what he may be called. In this case we hold that the administratrix took title to the ranch as trustee and the title is still in her. Defendants rely upon the opinion in *Smith v. Hensen*, 89 Kan. 792, 132 Pac. 997. In that case, however, the will contained a clause, as follows:

"Third, That all the remainder and balance of my estate, both real and personal, be sold by my executor in such a manner as he may deem best, and the proceeds thereof after paying all costs and accrued expenses be divided equally between my sons and daughters, share and share alike, but in case either or any of my sons or daughters be dead then their child or children shall have that share." (p. 793.)

This clause did not give the executor any such power and authority as the will in the case we are considering, nor did it contain the directions to the executor as to part of the proceeds that this will contains.

Having demonstrated that the trial court took too narrow a view of the power given the executor by the will, we shall consider the effect of the provision that the ranch should not sell for less than $20 an acre.

The trial court found on substantial evidence that neither at the time of the execution of the will nor at any time since had the ranch been worth $20 an acre, or an aggregate of $40,000, and that the provision of the will restricting the sale of the ranch to the time when it would bring such an amount was void. All parties seem to agree that this is correct.

Our question is, Does that make the entire clause 6 void? First, we will refer to the well-known rule that when it is possible to

determine the intent of the testator that intention must control. (See *Johnson v. Muller*, supra; *Selzer v. Selzer*, 146 Kan. 273, 69 P. 2d 708, 116 A. L. R. 1; also, *Hinshaw v. Wright*, 124 Kan. 792, 262 Pac. 601.) We have demonstrated that the intent of the testator in this case was unmistakable and clear. He knew just what he wanted done with the proceeds of the sale of this ranch when it was sold. The provision in question was the best way he knew to prevent the ranch from being hurriedly sold, and his estate from being wasted.

We have considered a situation somewhat like this heretofore. In *Dreisbach v. Spring*, 93 Kan. 240, 144 Pac. 195, the testator made a will providing, in effect, as follows:

"That all of his property at his death, after the payment of debts and a bequest of two hundred dollars to his daughter, should be held in trust by the executor or administrator for the use and benefit of his four grandchildren, John, Fritz, Sophia, and Marguerite Grossenbacher, 'or the survivors of them, during their natural lifetime, but only the net income from said real and personal property thus held in trust shall be paid to my said grandchildren or their survivors in equal shares, said income to accumulate in the hands of the trustee until each of said grandchildren becomes of age, when its respective share is to be paid to it, and thereafter to be paid annually, and at the death of the last survivor of my said four grandchildren all of the estate held in trust, both real and personal, shall be equally divided between the heirs of my said grandchildren being issue of their bodies, but should they all die without issue, then said estate is to go to the heirs at law of my brothers and sisters and their heirs and assigns forever.'" (p. 241.)

This will was later attacked on various grounds. On the question with which we are concerned this court said:

"The court held void as in violation of the rule against perpetuities that clause providing that should the four grandchildren all die without issue the estate should go to the heirs at law of the testator's brothers and sisters and their heirs and assigns forever. All parties appeared to acquiesce in the view of the court as to this clause, but the plaintiff contends that this void' provision destroys the entire will; that the general scheme of the testator was to so devise the property that it should under no circumstances go to the plaintiff or her children, and yet should her children die without issue she would be entitled to take as heir at law of the testator. The rule is invoked that when the legal and illegal portions of the will are so connected as 'to constitute an entire scheme which would be defeated by the rejection of the illegal portion, the whole must fall, and numerous authorities in support of this rule are cited. The appellant urges that an examination of the will shows a scheme so to tie up the property that neither the daughter nor any of the testator's grandchildren should ever receive any of it or any substantial benefits therefrom. The defendant suggests, on the contrary, that it seems plain, from the will that the general scheme was 'to conserve the prop

erty in the hands of the trustee so that the Grossenbacher children and the heirs of their bodies should have not only the net income, but the entire estate, and that in the very remote and improbable contingency of their all dying without issue the clause was inserted that the estate should go to the heirs of the testator's brothers and sisters at law and their heirs and assigns. We think it quite plain that Abraham Blauer so disliked his second son-in-law that he did not desire his widow or his child by her to receive any of the estate, but that he had sufficient affection for her children by her former husband to intend that it should go to them and the heirs of their bodies. It hardly seems reasonable, however, that he could have deemed it sufficiently probable that they would all die without issue to have regarded the void provision made in that event as of equal importance with the other desires expressed in the will. Still more improbable would it be that these four grandchildren would all die without issue during the life of their mother so that she could take as heir of the testator. We do not find sufficient basis, therefore, in the evidence and the circumstances shown thereby to apply the rule that if a part fall the whole must also fall." (p. 244.)

The point upon which that case turned was whether the deletion of the void clause would destroy the entire testamentary scheme of the testator. We have seen that it would not have such an effect in this case.

This general subject has received a great deal of attention in New York because of statutes that declare a great many forms of trusts illegal. In *Hascall v. King*, 162 N. Y. 134, 56 N. E. 515, the will directed that the income from certain property be used to pay an annual income to the widow and any income left should be used to pay off an encumbrance on the property. The court held that the provisions about paying off the encumbrance were void, but on the question with which we are interested, said:

"But it does not follow that the entire trust should be held to be void because of the direction to unlawfully accumulate a part of the income. The rule is that where there are two trust objects, one of which is principal and the other alternative, and the latter only is void, the principal trust may stand and the other fall. (*Schettler v. Smith*, 41 N. Y. 328; *Tiers v. Tiers*, 98; Id., 568; *Cross v. U. S. Trust Co.*, 131; Id. 330.) That rule is applicable to this situation and should govern it. The primary object of this testator, by the creation of this trust, was to provide an income for his wife, the accumulation for the purpose of paying the mortgages being secondary. Indeed, nothing was to be applied in payment of the mortgages until after the sum named by the testator should in each year be paid in full to his wife, the disposition of the balance being a mere ulterior contingent direction, entirely distinct from the primary trust. That being so, the former is separable from the primary trust and will not be allowed to invalidate it, and after the purposes of the primary trust have been satisfied, the surplus income must be distributed among those entitled to the next eventual estate." (p. 152.)

In *Kalish v. Kalish*, 166 N. Y. 368, 59 N. E. 917, the court said:

"Having demonstrated, as we think, that it is not only for the interests of all concerned in the estate, except the plaintiff, but also in direct furtherance of the testator's plan, to uphold this will by simply eliminating the void intermediate trust and its necessary incidents, we have now to inquire whether there is any legal obstacle to such a course. It is axiomatic that courts cannot make new wills for testators who have failed to make valid wills for themselves. While recognizing the force of this truth, courts have from the earliest times been compelled to choose between the alternatives of setting aside certain wills altogether, or of cutting out simply their void provisions. This necessity has led to the rule which is now firmly established in this state, that when the several parts of a will are so intermingled or interdependent that the bad cannot be separated from the good, the will must fail altogether; but when it is possible to cut out the invalid provisions, so as to leave intact the parts that are valid, and to preserve the general plan of the testator, such a construction will be adopted as will prevent intestacy, either partial or total, as the case may be. This case seems to present a fair opportunity for the application of the latter rule. Here we are not required to make a new will for the testator. . . . By way of recapitulation we, therefore, conclude that equity and the decided cases concur in requiring us to hold that the invalid parts of this will can be expunged without destroying the will as a whole, or creating even partial intestacy." (pp. 374, 375.)

In *Gettins v. Grand Rapids Trust Co.*, 249 Mich. 238, 228 N. W. 703, the will created a trust that the court held void because it violated the rule against perpetuities. The court held:

"The question before us is: May we lop off the invalid trust provision and permit the rest of the will to stand, or must we hold the entire will void because of such provision? To hold the will void is to defeat completely testatrix's whole plan of distribution of her property, which she had right to dispose of as she pleased. We may and should (eliminating the invalid trust provision) sustain the remainder of the will, if in doing so we do not violate the general plan and scheme of testatrix, if we do not in effect make a will for her." (p. 243.)

In *Johnson v. Preston*, 226 Ill. 447, 80 N. E. 1001, the will created a trust that the court held to be void because it violated the rule against perpetuities. The court examined the entire will, however, and said:

"Second, since, as we have seen, the executor can take nothing under this will, this brings us to the question whether the estate devised to the grandchildren can be sustained. It is a well-established rule that where valid and invalid portions of a will are so related to the general scheme of the testator as to be interdependent, so that they cannot be separated without doing violence to the testamentary plan, the entire disposition must fail. (*Lawrence v. Smith,* supra; *Eldred v. Meek,* supra; *Greenwood v. Greenwood,* 178 Ill. 387 [53 N. E. 101]; *Reid v. Voorhees,* 216 Ill. 236 [74 N. E. 804].) The converse

of this rule is likewise well established: That where the invalid portions can be separated from that which is valid, and still give effect to the general testamentary scheme, the invalid clauses will be disregarded, and those that are valid upheld. See cases cited, *supra*. The controlling consideration in the construction of the will is to discover the intention of the testator as expressed in the words of the will, and to give effect to such intention, if it can be done consistently with the law. (*Howe v. Hodge*, supra.) When the entire will before us is read, and each clause is compared with the others, the controlling purpose of the testatrix to give her son James J. Platt and his five sons her entire estate is manifest." (p. 458.)

See, also, *Stewart v. Woolley*, 106 N. Y. S. 99.

Running through all these cases is the holding that the thing to be preserved is the testamentary scheme or plan of the testator. If taking out the void clause destroys this plan, then the entire will must fail. If the void clause can be taken out and the testamentary plan followed then that should be done. We are confronted with a situation where the provision fixing the price at which the land may be sold may be disregarded, and still the testamentary plan carried out both as to the execution of the trust for one of the daughters and as to the payment of the proceeds of the sale to the other beneficiaries. To follow the contention of the defendants would destroy the entire plan of the testator and result in intestacy. It follows that so much of the judgment of the trial court as decreed that the sixth provision of the will was void should be reversed. Since the legal title to the ranch as held in trust by the administratrix the legal title to it is not in the heirs, and that part of the judgment which ordered partition should be reversed.

There remains the claim of Earl M. Blake as to the 480 acres. We have examined this record and have reached the conclusion that this 480 acres was not a part of the ranch referred to by the testator in his will. Hence the claim of Earl M. Blake was not a contest of the will, and the statute fixing a time within which an action to contest a will may be brought does not apply. So much of the judgment as deals with this claim should be affirmed.

The administratrix has the power and authority to sell the ranch to the best advantage of all the beneficiaries and to pay out the proceeds in accordance with the directions of the will.

The judgment of the trial court is reversed in part, and affirmed in part, with directions to proceed in accordance with the views herein expressed.

DAWSON, C. J., dissents.