No. 36,121

FLORA CHRISTY, *Appellant,* v. FRANK M. GAYLORD and JOHN D. GARRETT, *Appellees.*

(150 P. 2d 164)

Opinion filed July 8, 1944.

*P. G. Wadham,* of Marysville, argued the cause, and *W. J. Gregg* and *E. M. Gregg,* both of Frankfort, were on the briefs for the appellant.

*B. L. Sheridan,* of Paola, and *Walter T. Griffin,* of Marysville, argued the cause, and *R. L. Helvering,* of Marysville, was on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: Plaintiff appeals from a ruling of the trial court sustaining a motion of the defendant Gaylord for judgment on the pleadings.

The pleadings are too lengthy to be set out in detail and are summarized.

In her petition the plaintiff alleged that:

The defendant Gaylord had operated a general store at Axtell, Kan., for many years, and plaintiff had been employed by him as a clerk from about May 1, 1917, to May 1, 1939. Defendant Garrett was a traveling salesman who called on Gaylord and other merchants in northern Kansas, and prior to 1938 Gaylord and Garrett enjoyed the confidence of plaintiff and her husband; that in the year 1938 Gaylord and Garrett and others not parties to the action entered into a conspiracy to swindle plaintiff and her husband and other named persons in the pretended development for oil and gas of a certain tract of real estate in Doddridge county, West Virginia, known as the Gainer lease, in the following manner: In 1938 Gaylord and Garrett met at the Gaylord store and agreed between themselves that because of the employment of plaintiff by Gaylord over a period of years as his principal and confidential clerk, she would be guided by his representations to her of whatever he might tell her with respect to investing her money in the Gainer lease and through her he would be able to induce her husband to invest money in said lease, and that Garrett, because of his claimed familiarity with oil well prospecting in West Virginia would make such representations as might be necessary to induce certain named customers of his also to invest their money in the Gainer lease, and that Gaylord and Garrett would aid each other in any effort that might be necessary to induce plaintiff and other persons named to invest money and would represent that they, Gaylord and Garrett, were investing substantial sums in the Gainer lease and in prospecting thereon for oil and gas and that they would not do so if they were not positively certain of very large returns. It was further alleged they agreed to represent to the six prospective investors that Gaylord and Garrett would each subscribe and pay for a 5/32d part of

$14,400, which they would represent to the prospective investors was the standard charge for drilling a well on the Gainer lease, and that their associate O. E. Garrett, Sr., not a party, would also subscribe and pay for a 4/32d interest; that in 1938 and 1939 such representations were made to plaintiff and her husband and the other prospective investors; that in March, 1939, Gaylord and Garrett and certain prospective investors were going to West Virginia to inspect the lease and asked plaintiff's husband to go along, and all went to the lease where substantially the same representations as previously alleged were again made; that in April, 1939, it was represented by defendant Garrett that he and Gaylord, with others not parties hereto, owned the Gainer lease and were ready to proceed with its development immediately upon the signing of a typewritten drilling contract which he produced, representing it would cost $14,400 to drill and equip one well and that the cost should be paid in the proportion of $1,800 for each one-eighth working interest, and that Gaylord and Garrett would each take and pay for a 5/32d interest; that plaintiff should take a 4/32d interest and other persons other specified interests, and relying thereon plaintiff signed the drilling contract. We note, but do not summarize, allegations about perfecting a partnership organization under name of Meadow Lark Oil and Gas Company and its proposed officers, other than that plaintiff's husband, Roy Christy, was to be the treasurer; that plaintiff had no copy of the drilling contract, the agreement for drilling of a second well, and other allegations not necessary for our conclusions. Plaintiff alleged that relying upon the truthfulness of the representations made and that the funds collected would be honestly disbursed she paid Garrett the sum of $1,350, and later other sums. She further alleged that O. E. Garrett, Jr., did not own the Gainer lease and did not intend to execute a deed of assignment to plaintiff for her undivided one-eighth interest, and that the lease by the Gainer heirs was not executed until May 5, 1939, and that the defendants when making the representations and promises set out did not intend to contribute any money whatever toward the development of the Gainer lease and did not pay any part of their promised shares; that defendant's statement it would cost $14,400 to drill and equip a well and place it in operation was false. Plaintiff, repeating the substance of allegations previously made, charged that a certain deed of trust was fraudulently made and also that she was induced to contribute further money in the sum of $1,446.17 to complete the first well and to drill

the second well and that she had made a total payment of $2,796.17. She further alleged that Roy Christy received three payments totaling $749.99 paid under dates of November 20, 1939, January 3, 1940, and March 2, 1940, as net proceeds of oil produced and sold from the first well, of which she received $93.75 as her share, being the only moneys received by her, and although the defendants had not contributed to the cost they received their pretended shares. Plaintiff further alleged she did not discover the fraud until about March 18, 1940, when her husband went to West Virginia and from an examination of the public records discovered that the lease was not executed and delivered until May 5, 1939, and that the deed of trust had been executed under date of May 17, 1939, and that after such discovery the leasehold estate and all of the personal property used in developing the lease was appropriated by a named supply company and certain lien claimants in payment of obligations which defendants falsely and fraudulently represented to plaintiff would be paid from moneys contributed by the parties to the drilling agreements, and that defendants had collected from her the sum of $2,796.17 and from other persons other amounts and had "refused to make any accounting to plaintiff or the other victims of their fraud and swindle," and that defendants were indebted to her in the sum of $2,796.17 "obtained from her by their fraud as herein alleged." Her prayer was for judgment for the above amount and for costs.

Defendant Gaylord filed a separate answer in which he set out at length his version of the entire matter, and which, in view of denials in plaintiff's reply and amended reply, need not be noted. In addition, however, he alleged that about June 17, 1940, he was induced to go to Doddridge county, West Virginia, and while there he was served with process in a suit brought by plaintiff, her husband and others, and he attached a copy of the bill of complaint in that action as an exhibit to his answer. It will be referred to later.

Plaintiff filed a verified reply and a verified amended reply to the separate answer of the defendant Gaylord. The substance was to deny all of Gaylord's allegations insofar as they controverted the petition. It was alleged that the copy of the petition attached to Gaylord's answer was in an action in the circuit court of Doddridge county, West Virginia, wherein plaintiff and others were plaintiffs and Gaylord and others were defendants and that Gaylord had challenged the jurisdiction of the court by filing a plea in abate-

ment; that plaintiffs' demurrer to that plea was overruled and that later and on December 22, 1941, the action was dismissed without prejudice. Copies of certain pleadings and orders were attached, which need not be further reviewed.

The bill of complaint in the circuit court of Doddridge county, West Virginia, shows the plaintiffs were Roy Christy, Flora Christy and others, and the defendants were John D. Garrett, F. M. Gaylord and others. It was alleged that plaintiffs and defendants on or about April 23, 1939, had entered into an article of partnership for the purpose of drilling and operating the Gainer lease, under the name and style of Meadow Lark Oil and Gas Company, and that plaintiffs owned specified shares and the other members owned shares, the amount of which was unknown to plaintiffs; that under the partnership agreement each partner was required to pay to defendant O. E. Garrett, Sr., $1,800 for each one-eighth interest for the first well drilled and $1,500 for the second well drilled on the leasehold estate, under conditions not here material; that pursuant to the agreement well No. 1 was drilled and plaintiffs paid Garrett the amounts due under the agreement; that a second well was commenced and plaintiffs paid Garrett one-half of the amount due from them but Garrett had failed and refused to complete well No. 2, "yet the said John D. Garrett, . . . F. M. Gaylord, . . . have not paid any of their proportionate shares as required by the aforesaid agreement." Other allegations need not be noted. The prayer was for discovery; for appointment of a receiver to collect amounts due to the firm; that the assets of Meadow Lark Oil and Gas Company be ascertained and marshalled; for an accounting; for judgment and attachment to collect amounts due from Gaylord and others named to the partnership; for ascertainment of liens and that the partnership be wound up, and for equitable relief generally.

After the filing of the amended reply, defendant Gaylord filed his motion for judgment on the pleadings and in his favor for the reason it appeared, among other things, that plaintiff's cause of action was barred by the statute of limitations, and that by having elected and prosecuted against defendant another and inconsistent remedy from that sought in the present action, plaintiff was precluded from maintaining the remedy sought in the present action.

The trial court heard this motion and later, after consideration of argument and briefs, sustained it generally and rendered judgment that plaintiff take nothing by her action and that Gaylord recover

his costs. Plaintiff filed a motion for a new trial, which was denied. Within time plaintiff perfected her appeal from the judgment and all adverse rulings.

We shall take up first the question of inconsistency of remedies. We examine the pleadings in the first action filed in the circuit court of Doddridge county, West Virginia, and in the second action in this state, to determine the remedy sought to be pursued in each.

Appellant states that the apparent object of the West Virginia action was for discovery of what moneys had been paid by plaintiff and her associates, what moneys had been paid by Gaylord and others, and what became of such moneys, in order that she and others would be in a position to institute such individual actions as might seem advisable. Appellant's analysis of the bill of complaint in that action is not complete. In that action she pleaded and relied upon the drilling contracts as fixing the rights of the parties as partners and alleged that the defendants had not paid in their proportionate shares and she sought to compel such payment, for collection of the partnership assets, for an accounting of the partnership and for a winding up of its affairs. It is too clear for argument to say that she did not there affirm the contract.

With reference to the Kansas case, appellant contends the remedy sought is not inconsistent with that sought in West Virginia; that there was nothing pleaded in the West Virginia case which is denied in the present case and that the position taken in the Kansas case is not inconsistent with that taken in the West Virginia case. Although not clearly set forth, we understand her to contend the Kansas action is one for damages for deceit, and therefore one not inconsistent with the first action on the contract (18 Am. Jur. 139).

The allegations of the petition in the Kansas action have been heretofore summarized and will not be repeated. At no place in the amended petition is there any allegation susceptible of interpretation that plaintiff is affirming the contract alleged and seeking damages. On the contrary, the petition is replete with allegation of wrongful conduct of Gaylord toward plaintiff for the purpose of defrauding her of her money. She did not plead expressly that she disaffirmed the contract, but she made it clear that by reason of defendants' alleged fraud she had paid $2,796.17 into the venture, and that is what she sought to recover. We cannot interpret the petition in the Kansas case as being an action for damages for deceit; it is none other than one for rescission of the contract because of defendants'

fraud and for recovery of what she paid. We note appellant's argument that until after the filing of the West Virginia action, she was not aware that defendants had not paid their proportionate shares into the partnership, and hence that her position in the Kansas case is not necessarily inconsistent. We think it is a sufficient answer to say that she pleaded in the West Virginia action that defendants had not paid their shares. There is nothing to indicate she did not know all of the facts when she filed the West Virginia action for it was filed after the date she discovered the fraud as alleged in the Kansas action. She was under no misapprehension when either suit was filed. Having an opportunity to make a choice, she did so. It has been repeatedly held in this state that a party may not both affirm and disaffirm a contract. See, e. g., *Turner v. Jarboe*, 145 Kan. 202, 64 P. 2d 26, and cases cited. It has also been held that a choice as between two inconsistent remedies is determined by the commencement of an action, and the filing of a petition in such action gives finality to the election. (*Davidson v. McKown*, 157 Kan. 217, 139 P. 2d 421, and cases cited.)

Application of the above principles to the question now before us leads to the conclusion that appellant made an election when she instituted the West Virginia action on the theory of affirmance of the contract, and she may not now assert the contract is subject to rescission. The above appearing from the pleadings, the trial court properly sustained defendant Gaylord's motion for judgment on the pleadings.

In view of our conclusion it is not necessary to consider whether plaintiff's cause of action was barred by the statute of limitations.

The judgment of the trial court is affirmed.