GEORGE LEIS et al. v. WILLIAM T. SINCLAIR, as Administrator, etc., et al.

No. 13,228.   (74 Pac. 261.)

SYLLABUS BY THE COURT.

1. MORTGAGE—Contract of Assumption Construed. A written agreement guaranteeing that a certain mortgage debt of the grantors, assumed by a grantee, should at its maturity be extended at the option of the grantee, but not fixing the duration of such extension, and further that the grantors would pay all interest in excess of six per cent. per annum which the grantee might have to pay, is not definite as to time of the extension, but whatever uncertainty and defect there was in it was cured by the action of the grantors in subsequently recognizing and ratifying it.

2. CONTRACT—Time of Performance Not Specified. Ordinarily where there is a stipulation in an executory contract to do some act, and the time of performance is not specified, it is to be done within a reasonable time; and therefore the want of a stipulation to that effect does not necessarily render the contract void.

3. MORTGAGE—Agreement to Procure Extension. The attempt of the grantors to obtain an extension from one who had authority to extend, and their offer to purchase and obtain an assignment of the debt from an owner who was unwilling to sell and transfer it, were not a compliance with their agreement guaranteeing an extension.

4. ———— *Liability of Grantors*.  The grantors having failed to obtain an extension of the debt, it was competent for the grantee to do so, and the grantors are liable for any excess of interest or charges for the use of the money over six per cent. per annum, as the agreement provided.

Error from Douglas district court; C. A. SMART, judge.  Opinion filed November 7, 1903.  Affirmed.

STATEMENT.

IN a foreclosure proceeding the following findings of fact and conclusions of law were made:

FINDINGS OF FACT.

"1.  On the 1st day of February, 1889, the plaintiff was the owner of the north half of lot 42 and the south half of lot 91, on Massachusetts street, in the city of Lawrence, Douglas county, Kansas, and also the owner of lot 41, on New Hampshire street, in said city; that on that day he, together with the defendant Lillian R. Leis, borrowed from H. C. Bowman $4000, and executed their promissory note therefor, a copy whereof is attached to the answer and cross-petition of the executors of the estate of W. C. Beardsley, and marked 'Exhibit A.'  At the same time, and to secure the payment of said note, they executed and delivered to said Bowman their mortgage deed upon the north half of lot 42 and the south half of lot 91, on Massachusetts street, in said city.  A copy of said mortgage deed is attached to said answer and cross-petition, and marked 'Exhibit B'; that on the same day, and to further secure said promissory note, the said George Leis and Lillian R. Leis, his wife, executed a mortgage to said Bowman upon lot 41, on New Hampshire street, in said city, a copy whereof is attached to said answer and cross-petition, and marked 'Exhibit C.'

"2.  That on the 5th day of March, 1891, said George Leis and Lillian R. Leis made, executed and delivered to J. J. Kunkel their deed of conveyance, whereby they sold and conveyed to said Kunkel the north

half of lot 42, on Massachusetts street, in said city, for the sum of $7000. Said Kunkel paid said grantors $1000 in cash, assumed said indebtedness of $4000 to said Bowman, and executed and delivered to said George Leis the bond for $2000 and the mortgage securing same, copies whereof are attached to plaintiff's petition, marked 'Exhibits A and B,' respectively. The deed from said George Leis and Lillian R. Leis to said John J. Kunkel contained the following provision :

" 'And the parties of the first part do hereby covenant and agree that at the delivery hereof they are the lawful owners of the premises above granted, and seized of a good and indefeasible estate of inheritance therein, free and clear of all encumbrance save and except the above-described mortgage' (the $4000 mortgage to Bowman), 'which mortgage they hereby guarantee may and shall be extended, if desired by said party of the second part, at a rate of interest not to exceed six per cent. per annum, any excess of said rate to be paid by the first party,' which provision or guaranty is referred to in the mortgage for $2000 attached to plaintiff's petition in the following words : 'And it is also subject to the guaranty made by said Lillian R. Leis and George Leis, her husband, in their warranty deed of said property of even date herewith, made to said J. J. Kunkel.'

"3. The said warranty deed from said George Leis and Lillian R. Leis to J. J. Kunkel was prepared by Joseph E. Riggs, of Lawrence, Kan., as was also the mortgage for $2000 mentioned in plaintiffs' petition. Immediately prior to the drafting of said deed and mortgage, and while the parties were giving instructions to said Riggs as to how such papers should be prepared, the said George Leis agreed verbally with said J. J. Kunkel that at the maturity of said note and mortgage for $4000 he would secure its extension at a rate of interest not to exceed six per cent. for as long a time as said J. J. Kunkel should desire, and that he would pay the excess over six per cent., and it was pursuant to said verbal agreement that said stipu-

lation was written into said deed by said Joseph E. Riggs.

"4. The said bond for $4000, as also the mortgage securing the same, was transferred from time to time, as shown by the different indorsements and assignments appearing·thereon.

"5. About March 5, 1894, the said $4000 mortgage having matured, said J. J. Kunkel, both verbally and in writing, called upon said George Leis to carry out the terms of said stipulation with reference to the renewal of said mortgage; said Kunkel then desiring an extension of said $4000 loan for five years.

"6. On or about the 22d day of March, 1894, said, George Leis called upon the said H. C. Bowman, the original payee in said $4000 bond, for the purpose of negotiating an extension, and secured from said H. C. Bowman a verbal agreement to extend said note and mortgage for six months or a year, as said Leis should determine, at eight per cent. interest. Said J. J. Kunkel, however, was never informed by said George Leis or any one for him of said arrangement and agreement, and was during the same period of time himself negotiating with said Bowman for an extension of said $4000 mortgage, and not having succeeded, he called upon Wm. T. Sinclair, of Lawrence, Kan., and procured said Sinclair to buy said bond and mortgage, which said Sinclair did on or about May 23, 1894, said Kunkel agreeing to pay said Sinclair ten per cent. upon said $4000. Said Kunkel did pay to said Sinclair ten. per cent. upon said $4000 from the date of purchase until the 9th day of October, 1895, of which fact the plaintiff had notice. And on August 7, 1894, the plaintiff paid to said J. J. Kunkel $62.82 for interest in excess of six per cent. so paid by said Kunkel to said Sinclair.

"7. On the 9th day of October, 1895, said Sinclair, at the request of said J. J. Kunkel, sold and transferred said $4000 bond and mortgage to W. C. Beardsley, of Auburn, New York, at which time the said bond and mortgage were extended for five years at six per cent., and new coupons were signed by said J. J. Kunkel, representing the interest to mature thereon.

Said Kunkel paid said Sinclair $350 commission for securing said extension for five years upon said bond and mortgage. He acted in good faith, and made what he believed to be the best contract he could make with reference to the extension of said bond and mortgage. He could, however, have secured the extension he desired through said H. C. Bowman at eight per cent.

"8. On May 25, 1894, Wm. T. Sinclair, being the owner of the Bowman note and mortgage for $4000, wrote to the plaintiff, George Leis, informing him of that fact, and asking that the note be paid by June 1. Shortly thereafter, and before May 30, 1894, said Leis called upon said Sinclair, ascertained the amount due upon said mortgage, and requested said Sinclair to assign the same to him and transfer to him the $4000 note, at the same time tendering to said Sinclair his check upon the Lawrence National Bank for the amount due. Said Sinclair declined to assign said mortgage and transfer said note to said Leis, and on May 30, 1894, notified said Leis of that fact in writing, but advised him at the same time by the same letter that he might pay said bond and mortgage at any time and he would satisfy same of record. The request so made by George Leis of Wm. T. Sinclair was by said Sinclair communicated to said J. J. Kunkel prior to May 30, 1894, and it was at the urgent request of said J. J. Kunkel that said Sinclair declined to assign said note and mortgage to said George Leis.

"9. Said J. J. Kunkel died after the beginning of this suit, and the action has been revived in the name of his heirs and administrators. The said W. C. Beardsley has also died pending this litigation, and this action has been revived in the name of his executors.

"10. There is due the executors of the estate of W. C. Beardsley upon said $4000 note and mortgage the sum of $5275.16. There is due the plaintiff upon said $2000 bond and mortgage the sum of $3518, as also $67 insurance allowed, upon which should be credited $337.18 money expended by said J. J. Kunkel in securing the extension of said $4000 loan; balance

due at this date, $3247.82." (Record, pages 163 to 167.)

CONCLUSIONS OF LAW.

"1. The defendants, Katharine R. Beardsley and Josephine R. Beardsley, executrices of the estate of W. C. Beardsley, deceased, should have judgment against William T. Sinclair, as administrator of the estate of J. J. Kunkel, deceased, as principal, and against George Leis and Lillian R. Leis as sureties, for the sum of $5275.16, and a further judgment foreclosing the two mortgages set up in the answer of W. C. Beardsley, which constitute a first lien upon the real estate in said mortgage described, respectively : The north half of lot 42, on Massachusetts street, however, should be first sold and the proceeds applied towards the satisfaction of said judgment, and the other real estate sold only to satisfy any deficiency remaining after the application of the proceeds of the sale of said north half of lot 42.

"2. The plaintiff should have judgment against Wm. T. Sinclair, as administrator of the estate of J. J. Kunkel, deceased, for the sum of $3247.82, and a further judgment foreclosing the mortgage attached to his petition, which is a second lien upon said north half of lot 42."

Judgment was accordingly rendered, and the Leises complain.

*D. S. Alford,* and *W. W. Nevison,* for plaintiffs in error.

*Joseph E. Riggs,* and *George J. Barker,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, C. J. : The first contention is that there was error in the holding that the plaintiffs were under legal obligation to secure an extension of the Bowman note and mortgage in behalf of John J. Kunkel. In

48—67 KAN.

the covenant agreement incorporated in the deed made by the Leises to Kunkel, they recited an assurance that they were the owners of the property conveyed, and were seized of a good and indefeasible title, free and clear from all encumbrances, except the Bowman mortgage. As to that, it was stipulated: "Which mortgage they hereby guarantee may and shall be extended, if desired by said party of the second part, at a rate of interest not to exceed six per cent. per annum, any excess of said rate to be paid by the first. party." In the mortgage given at the same time by Kunkel to Leis for the unpaid portion of the consideration for the property, the guaranty was referred to as follows: "And it is also subject to the guaranty made by said Lillian R. Leis and George Leis, her husband, in their warranty deed of said property of even date herewith, made to said J. J. Kunkel."

It is argued, first, that the agreement to extend is so ambiguous and uncertain as to be unenforceable. It is definite as to the parties and the subject-matter. It positively fixes the rate of interest to be paid by Kunkel in case of the extension, and definitely provides that all excess of that rate must be paid by the Leises. The only uncertainty of the agreement is as to the time of extension. Some time was manifestly within the contemplation of the parties, and as the right of extension was at the option of Kunkel, it is not unreasonable to infer the intention to have been that the duration of the extension should be likewise at his option, within a reasonable time. In *Atwood v. Cobb*, 16 Pick. 227, 26 Am. Dec. 657, where no time was fixed for performance, Chief Justice Shaw remarked:

"As to the uncertainty of the time at which the agreement is to be executed, the case is c ear, that where on an executory contract a party stipulates to do some act, and no time is limited, it is to be done

within a reasonable time, and, therefore, the want of any stipulation to that effect does not render the instrument void.''

Ambiguous terms and doubtful stipulations may be interpreted by courts in the light of extrinsic and surrounding circumstances, but, of course, no testimony can be received which will alter or contradict the terms of an agreement.   Testimony was received explanatory of the purposes and objects of the parties in executing it, and some of it may have trenched on the rule admitting parol testimony to affect a written agreement.    However, if it were assumed that the agreement was so uncertain as to be defective, it was not necessary to support it by parol testimony in order to make it effective.   The defects, if any, were cured by the action of the parties in recognizing and ratifying it.   They contended in the court below, and are contending here, that they complied with this part of the agreement.   Aside from an ineffectual attempt to obtain an extension through H. C. Bowman, it was shown in the testimony, and found by the court, that after Kunkel had himself obtained an extension and had brought it to the attention of plaintiffs, the latter paid the excess of interest in accordance with the stipulation in the agreement challenged.   In that way they ratified and confirmed the agreement and cured whatever of invalidity there was in it.

The next contention is that there was error in the finding that the Leises had not complied with their contract to procure an extension of the Bowman debt. When Kunkel notified George Leis that he desired an extension or renewal of the note for five years, the latter opened negotiations with H. C. Bowman, the original mortgagee, for an extension, and did secure from him a verbal agreement to extend the note for a

short time at eight per cent. interest.   This action, however, was not effectual and cannot be regarded as a compliance with the agreement.   Aside from the fact that it was a verbal arrangement, it was made with one who no longer owned the note and who had no right to extend it.   More than that, the arrangement, such as it was, was not brought to the attention of Kunkel, who for his own protection procured Sinclair to take care of the paper for a short time at ten per cent. interest.   Later it passed into the hands of W. C. Beardsley, of New York, and he was induced to renew the paper for five years, at six per cent. interest, upon the payment to the agent of a commission of $350.   Nor can we say that the offer of Leis to purchase the note from Sinclair, and the refusal of Sinclair to assign it, operated as a compliance with the agreement to extend, or as a release of the Leises.   Sinclair was willing to accept payment of the debt, but not to assign it.   He was under no obligation to make an assignment or transfer of the note ; and, aside from these considerations, the Leises recognized the continuing force of the agreement by later paying the excess of interest on the extension which had been obtained.

Under the reciprocal agreements between these parties, their conduct in confirming the agreements and in acknowledging their obligations, there is no room for the application of the doctrine of suretyship or to claim a release of plaintiffs' liability because an extension was obtained without their consent.   Nor is there ground for reversal in the deduction of the amount paid by Kunkel as commission on the extension. Plaintiffs specifically bound themselves to obtain an extension, and as they failed in that respect Kunkel was justified in obtaining it, and the cost or charge

incurred in procuring an extension in excess of six per cent. per annum was properly chargeable against the plaintiffs.   The terms of the extension may not have been the most advantageous that could have been obtained, but it was found that Kunkel acted in good faith and made what he believed to be the best contract he could make in the matter of extension.   It appears that an extension could have been obtained through Bowman at a rate of eight per cent. per annum, but if the charge designated as commission is added as interest and distributed through the five-year period, it will be found to be less than the eight per cent. which might have been obtained through Bowman.   Under the circumstances, we think it was equitable to require the payment of this charge, which was no more than the extra cost of the use of the money which plaintiffs had agreed to pay.

The statute of limitations referred to is not properly in the case and requires no attention.

We find no errors in the rulings of the trial court, and therefore its judgment will be affirmed.

All the Justices concurring.