No. 39,063

BEULAH EWING EHRHART and RALPH MILLER, *Appellants,* v. RALPH SPENCER and MAXINE SPENCER, *Appellees.*

(263 P. 2d 246)

Opinion filed November 7, 1953.

*Edward T. Riling,* of Lawrence, argued the cause and was on the briefs for the appellants.

*George K. Melvin,* of Lawrence, argued the cause and was on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: This was an action in ejectment in which a jury returned a general verdict for defendants and judgment was rendered accordingly. The plaintiffs appeal.

·Beulah Ehrhart is a niece and Ralph Miller and Ralph Spencer are nephews of John W. Spencer, a resident of Douglas county, who died in a Topeka hospital on December 22, 1951. Maxine Spencer · is the wife of Ralph Spencer.

The plaintiffs, Beulah Ehrhart and Ralph Miller, commenced this action against the defendants, Ralph Spencer and Maxine Spencer, on April 21, 1952, by filing a petition wherein they alleged: First, that on April 13, 1949, John W. Spencer was the owner and in possession of 400 acres of real estate (describing it) located in Douglas county; second, that on that date such decedent leased the real estate to defendants by written agreement the terms and conditions of which appear in a copy of the lease attached to and made a part of the pleading; that on April 11, 1950, John W. Spencer conveyed the real estate to plaintiffs by warranty deed, reserving a life estate therein; third, that the written agreement between the decedent and defendants was null and void for the reason it created a perpetuity, and if not, then such lease, by its own terms and by reason of facts thereinafter set forth, had become of no further force and effect; fourth, that defendants had breached and failed to fulfill each and every part of the lease and agreement "by failing to replace fruit trees; by failing to repair fence; by allowing more than two ponies to be pastured on the hay meadow; by allowing manure to pile up in and around the barn and by allowing the house and buildings to run down; and further damaging the land by pasturing stock during wet and soggy weather all of which have been under the sole control of the defendants since the making of the above mentioned lease and agreements."

Without further detail it may be said that remaining paragraphs of the petition contained allegations, of no particular importance to the issues, to the effect that plaintiffs had fully performed their obligations under the lease; that they had given defendants notice to vacate the premises; that defendants had refused to vacate the property and were unlawfully retaining its possession; and that plaintiffs were entitled to judgment for the immediate possession of the real estate and damages in an amount stated.

Pertinent portions of the lease in question read:

"TO have and hold the same for the term of ONE YEAR, unto the said party of the second part from the 13th day of April, 1948, to the 13th day of April, 1949.

"AND the said party of the second part, in consideration of leasing the premises, as above set forth, covenants and agrees with the said party of the first part to pay to the said party of the first part, his heirs or assigns, as rent for the same, the sum of FIVE HUNDRED ($500.00) for the said term, on December 1, 1948.

"The second party agrees that he will not at any time pasture more than two ponies on the hay meadow, and then only when ground is sufficiently dry that no damage will be caused.

"SECOND party agrees that he will haul and spread all manure on the farm land and will not permit it to pile up or bank up around the barns.

"FIRST party agrees to pay all taxes and keep premises insured to his own satisfaction.

"POSSESSION given immediately upon execution of this agreement.

"FIRST party agrees that second party may use any and all dead wood any where on the premises for fire wood, and if he needs more wood for fire wood he may cut such wood as may be agreed upon by the parties hereto.

"FIRST party agrees that if second party pays the rent on time as herein specified and performs the other agreements on his part to be performed and takes care of the place in a proper manner as herein agreed that second party shall have the option of renewing this lease from year to year at the same rental by giving first party a written notice of his election to renew the same at least 60 days prior to the expiration of the term herein agreed upon.

"IT IS further agreed that when fences are repaired or constructed that second party will perform labor and first party will furnish the wire, posts and staples."

With the petition in form as related defendants filed a motion which, so far as grounds sustained are concerned, asked that plaintiffs be required to strike all allegations of the third paragraph of that pleading relating to "failing to replace fruit trees, failing to repair fence and allowing the house and buildings to run down and damage to the land by pasturing stock during wet and soggy weather" for the reason such allegations did not state any violation of the terms of the lease; and that plaintiffs be required to separate, state, and number their cause of action for damages, if any, and plead facts itemizing and showing them to be entitled to such damages, if any.

After the sustaining of the foregoing portions of the defendants' motion plaintiffs acquiesced in the rulings with respect thereto, and we pause to point out make no complaint thereof on appellate review, by filing an amended petition. This pleading made no at-

tempt to comply with that portion of the trial court's ruling requiring them to itemize and plead facts disclosing their right to damages, if any. Otherwise it contained allegations substantially the same as those set forth in the original petition except that in lieu of the allegations originally pleaded in the third paragraph of that pleading it contained the following averments:

"Plaintiffs further allege and show to the Court that said·lease, a copy of which is attached hereto and made a part hereof, provides as follows: Second party (Ralph W. Spencer) agrees that he will not at any time pasture more than two ponies on the hay meadow, and then only when ground is sufficiently dry that no damage will be caused.

"Plaintiffs further allege and show to the Court that the defendants in this action have violated and are now violating said provision in said lease and have permitted large numbers of cattle, hogs and horses to run upon and pasture the hay meadow which is the principal part of the real estate hereinbefore described.

"Plaintiffs further allege and show to the Court that said lease hereinbefore referred to provides as follows: Second party (Ralph W. Spencer) agrees that he will haul and spread all manure on the farm and will not permit it to pile up or bank up around the barns.

"Plaintiffs allege and show to the Court that the defendants in this action have violated and are now violating said provision of said lease in that they have allowed manure to pile up and bank up around the barns on the premises described above and have failed, neglected and refused to haul and spread all manure on the farm, as said lease provides.

"Plaintiffs further allege and show to the Court that by reason of the facts hereinbefore set out, showing that the defendants have violated the terms and conditions of said lease, they are not entitled to the option of renewing said lease from year to year, as said lease provides 'if they do not violate any of the terms and conditions of said lease, they may renew said option.'"

Defendants' response to the amended petition was a combined demurrer and answer. It read:

"Come now the defendants above named and demur specially to that part of plaintiffs' petition commencing on the bottom of page 1 thereof, and reading as follows: 'Plaintiffs further allege and show to the court that the said written agreement between John W. Spencer and Ralph Spencer and Maxine Spencer is null and void for the reason that it creates a perpetuity,' for the reason that no cause of action is stated thereby as said petition together with the exhibits thereto shows on its face that the rule against perpetuities has not been abridged.

"Further answering, defendants deny each and every allegation in plaintiffs' amended petition contained, except that defendants admit all of the allegations of the first paragraph of said amended petition."

Following the filing of the pleading last above described the trial court found that the written lease agreement attached to the peti-

tion did not violate the rule against perpetuities and sustained the demurrer to the portion of the petition demurred to by defendants.

Thereafter plaintiffs requested and obtained leave of the court to file an amendment to their amended petition wherein they expanded certain allegations thereof and charged that by reason of defendants having permitted manure to accumulate around the cow barn, and that building to get out of repair, they were precluded from securing policies of insurance to protect them against loss by fire or tornado on such building in violation of the express and implied terms of the lease and that as a consequence thereof it was destroyed by fire at a time when they had no insurance thereon and sustained a loss to the extent of its value by reason of the fault and negligence of the defendants in not performing their duties and obligations as lessees of the property.

With issues thus joined the cause came on for trial by a jury. In plaintiffs' opening statement the jury was told that they expected to prove three things in the action, namely: that defendants consistently pastured considerably more cows than two ponies on the hay meadow; that defendants let manure pile up around the barn, in fact banked it up around that building notwithstanding they had agreed, under the terms of the lease, to haul and spread it on the farm land; and that by reason of defendants' action with respect to the manure plaintiffs were precluded from getting insurance on one barn which caught fire, burned down, and resulted in their sustaining a loss. Following their opening statement plaintiffs adduced their evidence and rested. Defendants then adduced their evidence and rested. Thereafter, on instructions to which plaintiffs made no objection, the cause was submitted to the jury which, in due time, returned a general verdict in favor of the defendants. Thereupon plaintiffs filed a motion for new trial. When this motion was overruled judgment was rendered in conformity with the verdict and the plaintiffs perfected this appeal.

In their brief appellants state the first question involved in this case is "Did the court err in sustaining the demurrer of the appellees to that part of the appellants' amended petition which alleges that the written agreement between John W. Spencer and Ralph and Maxine Spencer is null and void for the reason it creates a perpetuity." The parties assert no decision will be found in our reports wherein this question has been specifically determined and we must confess our independent research discloses none. Nevertheless an examination of numerous decisions from other jurisdictions con-

vinces us that it requires a negative answer, particularly where—as in our state—there is no statute limiting the length of the term of a lease. The law is well stated in 41 Am. Jur., Perpetuities and Restraints on Alienation, 78, § 34, where the following appears:

"The rule against perpetuities applies to the creation of a term of years as well as to a freehold estate, and a lease of real property creating future interests, in order to be valid, must not transcend this rule. Since the rule is concerned with the creation and not with the termination of an estate, it has been held that a lease of land for any number of years does not violate the statute against perpetuities, and a perpetual lease or a lease containing a covenant for perpetual renewal does not violate the rule."

To the same effect is 70 C. J. S., Perpetuities, 588, § 11, which reads:

"A lease for any term, taking effect in praesenti, does not violate the rule against perpetuities, although as discussed in Landlord and Tenant, § 227, it may be in violation of a statute limiting the length of the term of a lease."

See, also, 32 Am. Jur., Landlord and Tenant, 813, § 967, where in discussing the validity of perpetual renewals, it is said:

". . . It has been generally held that a provision in a lease for perpetual renewal is not violative either of the rule against perpetuities or of statutes limiting the period during which the absolute power of alienation may be suspended. The reason for this is that the covenant to renew may be taken as part of the lessee's present interest. It is obvious that a perpetual lease, or a lease containing a covenant for perpetual renewal, is not a restraint or limitation upon the power of alienation of the fee, for there are at all times persons in being who by joining can convey the fee. However, a special statute against perpetuities which provides in effect that any disposition of real estate is void where the right of alienation is restrained beyond the period of the life of the owner and twenty-one years and fractions thereof, renders void a lease giving the lessee, his heirs, assigns, executors, and administrators the right to extend it from year to year."

Limits of time and space preclude specific reference to the many decisions upholding the principles stated in the foregoing quotations. It suffices to say they are listed in one of the earlier American Law Reports, 3 A. L. R., Anno, 498, where it is stated:

"Save in a single instance (*Morrison v. Rossignol* [Cal.] *Infra*), it has been generally held that perpetual leases and leases containing a covenant for perpetual renewal are not violative, either of the rule against perpetuities or of statutes limiting the period during which the absolute power of alienation may be suspended."

And in a much later volume of the same reports, 162 A. L. R., Anno, 1147, the opening statement of which reads:

"This annotation supplements that in 3 A. L. R. 498.

"The rule, set out in the original annotation, that perpetual leases and leases containing covenants for perpetual renewal are not violative either of the rule against perpetuities or of statutes limiting the period during which the absolute power of alienation may be suspended, has been consistently adhered to by the courts since the original annotation was written."

Although not specifically assigned as error appellants argue the trial court should have held, as alleged in their petition, that the lease, even if it did not violate the rules against perpetuities, had expired by its own terms prior to the date of the commencement of the action. Heretofore the lease has been quoted *in toto*. Reference to the next to the last paragraph thereof discloses the conditions and circumstances under which John W. Spencer gave appellees the option or privilege of renewing it from year to year. The province of the trial court was not to pass upon whether the lessor's action in that respect was either prudent or wise but to decide whether the language giving the lessees that right was clear and unequivocal. If it did, that tribunal, under all well established rules of statutory construction, was required to give such language force and effect. We are cited to no cases holding as appellants contend and hence might well assume their counsel, after diligent search, have been unable to find any. (*McCoy v. Fleming*, 153 Kan. 780, 783, 113 P. 2d 1074; *Simeon v. Schroeder*, 170 Kan. 471, 475, 227 P. 2d 153.) However, it may be stated, our extended examination of the authorities discloses no decisions sustaining their position on this point where the provisions of the renewal or extension clause of the lease were as clear and complete as those here involved. This, we may add, holds true of *Lyons v. Osborne*, 45 Kan. 650, 26 Pac. 31, the only decision of this court relied on by appellants. Therefore we have little difficulty in holding that, under the confronting facts and circumstances, the trial court's conclusion the lease had not expired by its own terms as a matter of law was entirely proper.

The second error assigned by appellants is to the effect the trial court erred in sustaining appellees' objections to evidence offered to show that by reason of the appellees' breach of the lease and implied covenants appellants were unable to secure insurance on all the improvements on the land in question, part of which were destroyed by fire and not covered by insurance. Under the pleadings the issue respecting inability to obtain insurance and resulting loss by fire was limited to the cow barn. Resort to the record reveals the trial court permitted appellants' insurance agent to testify that

his company did not insure the cow barn because manure had been permitted to accumulate and such building was out of repair. Also that it admitted other testimony establishing this building was destroyed by fire. In the face of these facts it cannot be said the trial court erred in rejecting like evidence respecting inability to obtain insurance on buildings not involved under this particular issue. Conceding, without deciding, that the trial court rejected cumulative evidence respecting the reasons for appellants' inability to obtain insurance on the cow barn affords no sound ground for reversal of the judgment even if it be assumed the evidence offered was otherwise admissible. It did permit the insurance agent, who was the person best qualified to do so, to testify as above indicated and his testimony went to the jury. In that situation the rejection of other evidence on the same point did not prejudice appellants' substantial rights and, under our statute (G. S. 1949, 60-3317), any errors complained of with respect thereto must be disregarded.

The next error assigned by appellants relates to the giving of improper instructions. No contention is made by appellants that they requested additional instructions or made any objections to those given by the trial court and the record fails to disclose that they did so. Under such circumstances the rule in this jurisdiction is that they became the law of the case and are not now a subject for appellate review. (See *Montague v. Burgerhoff*, 152 Kan. 124, 128, 102 P. 2d 1031; *Coryell v. Edens*, 158 Kan. 771, 772, 150 P. 2d 341; and numerous other decisions cited in West's Kansas Digest, Appeal and Error, § 215; Hatcher's Kansas Digest [Rev. Ed.], Appeal and Error, §§ 344, 345.)

Another claim of error urged is that the verdict and judgment was contrary to the evidence. This claim must, of course, be examined in the light of the elementary and universal rule that if the record discloses substantial competent evidence to sustain the verdict and judgment they must be upheld.

We have carefully reviewed the record and are not disposed to prolong this opinion by detailing the testimony to be found therein. It suffices to say it discloses highly conflicting but nevertheless substantial testimony which, if believed, would sustain the claim of either the appellees or the appellants respecting alleged violations of the terms and conditions of the lease as set forth in the pleadings. The cold, hard facts are that the jury rejected the testimony of appellants' witnesses and accepted that of appellees' regarding

those matters. In that situation this court has no right to disturb either the verdict or judgment.

Appellants' final claim that the trial court erred in overruling its motion for a new trial presents nothing new and is based on arguments and contentions heretofore considered and determined.

Finding nothing in the record or in the contentions and arguments advanced by appellants warranting its reversal the judgment of the trial court must be affirmed.

It is so ordered.