No. 40,907

RALPH H. PRICE, *Appellee,* v. A. L. BRODRICK, *Appellant.*

(325 P. 2d 387)

Opinion filed May 10, 1958.

*Maurice P. O'Keefe,* of Atchison, argued the cause, and *Karl W. Root, Dolan McKelvy, Maurice P. O'Keefe, Jr.,* and *Terence D. O'Keefe,* all of Atchison, were with him on the briefs for the appellant.

*Robert A. Reeder* and *George T. Van Bebber,* both of Troy, argued the cause and were on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: This is an appeal from a judgment of the trial court in an equity suit for an accounting sought by a landlord from his tenant under a lease and option to purchase contract. The trial court entered judgment for plaintiff requiring defendant to make the ac-

counting and holding the option to purchase portion of the contract was unenforceable.

Our attention is first directed to plaintiff's motion to dismiss the appeal for failure of defendant to set out in his brief the separately numbered questions involved, as required by our rule 6 (3). An attorney is an officer of the court (*State v. Majors*, 182 Kan. 644, 323 P. 2d 917) and he should make every effort to meet the requirement that the rules of the court are to be complied with and followed in every particular. It is by exercising this degree of particularity that an attorney guards against dismissal of his appeal. However, this court is committed to the practice of favoring appeals and before an appeal is dismissed, the court will go further into the record and determine whether such failure to comply with the rules results in hardship or disadvantage to the opposition. (*Taylor v. State Highway Commission*, 182 Kan. 397, 320 P. 2d 832.) The record before us has been carefully examined. It is well-presented in all other particulars, no apparent prejudice is shown by the above-mentioned failure, and in consideration of the furtherance of justice, we conclude the motion to dismiss should be and it is hereby overruled.

The principal question in this appeal relates to the enforceability of that portion of the contract providing for defendant's right to exercise his option to purchase certain farm land consisting of 771.5 acres. The pertinent portion reads:

"In consideration of the leasing of said premises and the mutual promises of the parties hereto, it is agreed by and between the parties hereto that landlord is to buck all timber and brush into windrows, and tenant is to burn the timber and brush in the windrows. Tenant has the option to purchase landlord's one-half of all crops grown on said premises at the prevailing market price for said crops, when they are harvested.

"In consideration of the leasing and promises of the parties, and in consideration of the further sum of one dollar paid by tenant to landlord, the receipt of which is hereby acknowledged by landlord; landlord gives the tenant the option to purchase the above described real property at the price of One Hundred Dollars per acre of measured ground at any time, up to and including July 1, 1955. If tenant elects to purchase the above described real property, he is to notify the landlord in writing on or before July 1, 1955, and then said real property is to be measured and the purchase price is to be $100.00 per acre for the measured acres in said tract. In case tenant purchases said property, landlord is to furnish tenant abstracts of title showing a good and merchantable title to said real property to be vested in landlord; upon approval of said abstracts, tenant is to pay landlord one-fourth (¼) of the purchase price; tenant is to pay landlord an additional one-fourth (¼) of the

purchase price on or before February 1, 1956, and landlord is to execute and deliver to tenant a good and sufficient warranty deed conveying the above described real property to tenant, and tenant is to give landlord a first mortgage on said real property for the remaining one-half of the purchase price, the terms of the mortgage to be agreed upon by the parties at that time. If tenant purchases said real property, tenant is to pay the taxes on said premises for the year 1955. Landlord has approximately 15 acres more to clear on said premises, and if tenant purchases said real property, he is to pay landlord $40.00 per acre for said land so cleared and pushed into windrows."

Defendant pin points the following allegation in plaintiff's original petition and first amended petition,

"Plaintiff further alleges that he has performed all duties required of him under said lease and option and is ready and willing to perform all further requirements under the said contract . . .,"

which he claims is an election by plaintiff to rely on and affirm the lease and option contract in its entirety. An additional portion of the first and second amended petitions sets out a signed and written election by defendant to exercise the option to purchase which was delivered to plaintiff on June 29, 1955. A copy of such written election was attached as an exhibit to each of these petitions. Defendant then argues that plaintiff attempted to assert a remedy inconsistent with that relied on in his first petition by omitting from the second amended petition that part of the above-quoted allegation reading as follows,

". . . and is ready and willing to perform all further requirements under the said contract . . .," (our emphasis)

and for the first time alleging in his second amended petition that:

". . . under the terms of said lease and option to purchase the terms of the mortgage to be given by the defendant to the plaintiff to secure the unpaid balance of the purchase price of the lands covered by said lease and option to purchase are left for future determination by the parties. That as a result the option to purchase provisions of the contract are void and unenforceable; that said contract constitutes a cloud upon plaintiff's lands. That the provisions of the contract providing for the sale of land by the plaintiff to the defendant should be held for naught and set aside by this court."

Defendant contends the above cannot be done and cites as authority *Davidson v. McKown,* 157 Kan. 217, 139 P. 2d 421; *Christy v. Gaylord,* 158 Kan. 753, 150 P. 2d 164.

All three of plaintiff's petitions sought an accounting of the 1955 crops produced on the farm by defendant. In brief, the answer of defendant was a general denial but it also admitted fee simple title to the farm in plaintiff, the execution of the contract, and de-

fendant's election to purchase the farm. Subsequent to defendant's election to purchase, plaintiff had furnished abstracts which defendant submitted to his attorney for examination. Plaintiff was presented with copy of such attorney's opinion, which opinion required that a quiet title action be brought to establish good and merchantable title in plaintiff. On November 9, 1955, defendant wrote the plaintiff asking that a survey be made and on November 14, 1955, he wrote plaintiff a second letter in which he stated that he desired to pay the 1955 taxes and again requested that a survey be made immediately. On November 17, 1955, defendant's attorney also wrote to plaintiff and requested a survey. After another letter from this same attorney to plaintiff asking for a survey so defendant could pay the 1955 taxes and requesting a meeting of the parties with their attorneys, such a meeting took place. Defendant was there informed that plaintiff had paid the 1955 taxes but the payment would not jeopardize or be considered as a waiver of defendant's rights. If plaintiff would execute a warranty deed and show title as stated, defendant at all times stood ready to do whatever the court required and to pay one-fourth of the purchase price together with another one-fourth on or before February 1, 1956, to execute a promissory note, secured by a first mortgage on the farm, for the remaining half of the purchase price and to comply fully with the terms of the agreement. If further required by the court defendant would remit the amount of the 1955 taxes to plaintiff with any interest paid thereon. Defendant had paid the 1956 taxes. He would comply with any order made by the court and would pay all the purchase price if so ordered. Prior to exercise of the option he had planted 350 acres of corn, 200 of which had started to grow and after the exercise of the option, 150 additional acres of corn were planted. Plaintiff had had the property surveyed. It was intended by the parties that upon defendant's election to purchase, he would pay the 1955 taxes, plaintiff would not furnish any seed or fertilizer and the landlord-tenant relationship would be replaced by that vendor-vendee. Plaintiff on several occasions had orally and in writing stated he would comply with the agreement, he would have the land surveyed, and would convey the land if defendant would give him half the 1955 crops.

The answer further stated that by having the abstracts extended, in not furnishing half the seed or fertilizer, in having the farm sur-

veyed, in his willingness to convey on condition, in allowing the examination of the abstracts by defendant and allowing defendant to pay the 1956 taxes, and allowing defendant to exercise ownership over the farm, plaintiff was estopped from claiming the option to be indefinite and unenforceable. Plaintiff had elected to comply with the lease and option to purchase and when defendant exercised the option to purchase, the landlord-tenant relationship was thereby replaced by that of vendor-purchaser. The letters from defendant and his counsel to plaintiff were attached to the answer as exhibits.

Plaintiff's reply denied generally every material allegation of new matter in the answer.

It was stipulated that shortly after November 7, 1955, plaintiff had obtained a survey showing 771.5 acres in the farm, which survey was filed March 12, 1956, in the Atchison county engineer's office.

In a pretrial order dated May 22, 1957, all exhibits attached to the pleadings were received in evidence and in effect the facts were established that if the option to purchase was good, then defendant's serving of his election to purchase on plaintiff on June 29, 1955, at which time none of the crops were mature, had terminated the landlord-tenant relationship and henceforth there was a vendor-purchaser relationship; for whatever consideration it merited, the survey was admitted; plaintiff had had abstracts posted to date and had submitted them for examination by defendant's attorney, Katherine A. Tarwater, whose opinion showing that it was necessary to quiet title to make it merchantable was given plaintiff on November 7, 1955; and that defendant had attempted to pay the 1955 taxes but before he could do so, plaintiff had paid them.

The contested issue of law to be determined was,

"Is the option to purchase the real estate in question in the 'Option-Lease Agreement' valid and enforceable?"

After a trial on May 22, 1957, the court thereupon entered an order determining that the option to purchase was unenforceable and ordering defendant to make an accounting before June 5, 1957. On May 24, 1957, defendant filed a motion for new trial which was overruled on June 5, 1957. An accounting of the 1955 crop was made by defendant showing the landlord's share to be $13,887.06 which amount the court ordered defendant to pay to plaintiff. On the same day defendant filed another motion for new trial which the trial court also overruled on June 5, 1957.

In a counter abstract plaintiff submits certain orders of the trial court relating to other motions filed by him but since there is no cross-appeal from those orders and we can see no reason to discuss them, we will not do so.

The facts were stipulated or admitted in the pleadings and on the pretrial conference. We, therefore, have everything before us that was before the trial court and must consider the same question as did the trial court, namely, is the option clause in the contract enforceable?

Plaintiff argues the clause providing that defendant is to give plaintiff a first mortgage on the farm property for the remaining half of the purchase price and that the terms of the mortgage to be agreed upon by the parties at the time make the option so indefinite and indeterminate that it is unenforceable. He relies on *Nichols v. Coppock*, 124 Kan. 652, 261 Pac. 574, wherein the parties corresponded over the price and quantity of land from June, 1924, to February, 1925. Finally, the defendant wired plaintiff to the effect he was not anxious to sell, especially the north half, but would take $34,000 for his entire piece of land, which was about the same rate as he had priced the south half, *with easy terms*. The court there held the contract unenforceable for indefiniteness of terms because "That was something to be mutually agreed upon in the future. . . ." (p. 656.) The negotiations had first started between plaintiff as agent to acquire the land for the Mission Hills Golf Club but the above telegram related to plaintiff as an individual purchaser. Later on in the opinion the court pin pointed the future material agreements as follows:

"But as already stated, a sale to plaintiff was a new proposition, distinctly different from the one relating to the sale of one-half of the tract to the golf club, and nothing in the correspondence relating to the sale to plaintiff himself indicated that the terms previously made to the golf club would be carried forward and constitute a part of the proposition for the sale of the whole tract to plaintiff." (p. 656.)

This court there further commented that the words *easy terms* did not determine cash to be paid, times or amounts of subsequent payments, or security for deferred payments. We cannot agree with plaintiff that the Nichols case controls here because the cases are not only distinguishable, as contended by defendant, but they present entirely different situations.

The difference in our case lies in the undisputed facts that defendant exercised his option to purchase the land described in the

contract and under the option he had to pay one-half the purchase price in cash before February 1, 1956, and execute to plaintiff a first mortgage on the land for the remaining one-half. The purchase price was $100.00 per acre and by multiplying that figure by the 771.5 acres determined by the survey, the amount of the mortgage was ascertainable. This complies with our rule that in order to maintain an action for specific performance of a contract, it is essential that its terms and conditions be sufficiently definite and certain or that they may be made definite and certain by reference to other data. (*Wing v. Mollett*, 115 Kan. 116, 222 Pac. 88.) The questions of when the first mortgage became due and the rate of interest it bears, of course, remain. While plaintiff does not seriously attack these points, in determining the first point in earlier similar cases, we have, in substance, said that where the time of performance of some stipulated act is not specified, it is to be done *within a reasonable time* and want of a stipulation as to the time of performance does not necessarily render the contract void. (*Leis v. Sinclair*, 67 Kan. 748, 74 Pac. 261; *Eakin v. Wycoff*, 118 Kan. 167, 171-172, 234 Pac. 63; *Brunhoeber v. Brunhoeber*, 180 Kan. 396, 400, 304 P. 2d 521.)

As to the element of interest, we have a statute (G. S. 1949, 16-201) which controls the legal rate of interest in such a situation by the following provision:

"Creditors shall be allowed to receive interest at the rate of six percent per annum, when no other rate of interest is agreed upon, for any money after it becomes due. . . ."

Plaintiff had never questioned, withdrawn or repudiated the rights of defendant to exercise the option to purchase the farm until he filed his second amended petition and at that time, as already stated, there had been part performance of the terms thereof by both parties. Defendant contends, and we think properly, that such conduct and part performance estops plaintiff from contending that the option to purchase is unenforceable. An equitable estoppel rests largely on the facts and circumstances of a particular case and consequently any attempted definition usually amounts to no more than a declaration of an estoppel under those particular facts and circumstances. In *Gas Service Co. v. Consolidated Gas Utilities Corp.*, 145 Kan. 423, 65 P. 2d 584, a definition from 10 R. C. L., page 689, is restated in part:

"The following, however, may be ventured as the sum of all cases: That a person is held to a representation made or a position assumed, where otherwise

inequitable consequences would result to another who, having the right to do so under all of the circumstances of the case, has, in good faith, relied thereon. Such an estoppel is founded on morality and justice." (pp. 435-436.)

See, also, *Board of County Commissioners v. Brown*, 183 Kan. 19, 325 P. 2d 382.

The defendant, in reliance on his right to exercise the option and in reliance on the conduct of the plaintiff, altered his position to his detriment so that he should be allowed to compel the complete performance of the contract. (*Baldridge v. Centgraf*, 82 Kan. 240, 108 Pac. 83.)

In *Tinkler v. Devine*, 159 Kan. 308, 154 P. 2d 119, under an option clause if the landlords found a purchaser to whom they were willing to sell, their tenant had the first right to purchase at the same price and terms as agreed between the landlords and the other purchaser. After receiving notice the tenant had seven days to accept or reject the option and if there was a sale or assignment of the lease by the landlords to a third party, the option contract would be binding on such other purchaser or assignee of the lease. This court held that the lessee had to accept or reject the offer in seven days but had a reasonable time to comply with the terms of the contract of sale and that even though the land had been conveyed to a third party who had had notice of the lessee's option, the lessee had not been notified of the sale and lessee was entitled to specific performance of the contract.

A recent decision repeating the rule that a tenant has a reasonable time after he exercises an option to pay the money and complete a contract is *Reger v. Sours*, 181 Kan. 423, 311 P. 2d 996.

In view of the authorities, we can only conclude the option to purchase was a definite contract and the lessee was entitled to specific performance thereof. The trial court erred in its ruling that such option provision was unenforceable and in decreeing the accounting in favor of defendant.

The judgment is reversed.